No.____________________

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**K. WENDELL LEWIS, *et al.*,**

**Plaintiffs/Respondents,**

**v.**

**PENSION BENEFIT GUARANTY CORPORATION,**

**Defendant/Petitioner.**

**D.D.C. Docket # 1:15-cv-01328- RBW**

---

# PENSION BENEFIT GUARANTY CORPORATION'S PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b)

JUDITH R. STARR
General Counsel
KENNETH J. COOPER
Assistant General Counsel
PAULA J. CONNELLY
JOSEPH M. Krettek
Assistant Chief Counsels
MARK R. SNYDER
Attorney
PENSION BENEFIT GUARANTY CORPORATION
1200 K Street, N.W.
Washington, D.C. 20005-4026
Telephone: (202) 326-4020 ext. 3423
Facsimile: (202) 326-4112
efile@pbgc.gov and snyder.mark@pbgc.gov
Attorneys for Defendant PBGC

February 2, 2017

# CERTIFICATE AS TO CORPORATE DISCLOSURE STATEMENT AND AS TO PARTIES, RULINGS, AND RELATED CASES

Petitioner Pension Benefit Guaranty Corporation ("PBGC") respectfully certifies the following:

## A. Disclosure statement

PBGC is a federal government agency established under 29 U.S.C. § 1302. As a wholly owned government corporation, PBGC is not required to file a corporate disclosure statement. Fed. R. App. P. 26.1(a); *see* Circuit R. 26.1(a).

## B. Parties and amici

The following is a list of all parties, amici, and intervenors who appeared in the district court: Plaintiffs K. Wendell Lewis and approximately 1,700 other individuals listed in Exhibit 5 hereto, App. 33; and Defendant PBGC. The following is a list of all persons who are parties, intervenors, or amici in this Court: K. Wendell Lewis and approximately 1,700 other individuals listed in Exhibit 5 hereto, App. 33; and PBGC.

## C. Rulings Under Review

The rulings of the United States District Court for the District of Columbia at issue in this Court are the Memorandum Opinion of Judge Reggie B. Walton entered on July 6, 2016, in Civil Action No. 1:15-cv-01328 (RBW), denying PBGC's Motion to Dismiss Claim One of Plaintiffs' First Amended Complaint (Petition Exhibit 2, App. 2), and the accompanying Order dated July 6, 2016 (Petition Exhibit 1, App. 1). No official citation exists, but an unofficial report is found at 2016 WL 3676099 (D.D.C. July 6, 2016).

## D. Related Cases

There are no related cases to the instant case.

# TABLE OF CONTENTS

CERTIFICATE AS TO CORPORATE DISCLOSURE STATEMENT AND AS TO PARTIES, RULINGS, AND RELATED CASES .................... i

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................... 4

ARGUMENT ........................................................................................ 7

A. THE DECISION BELOW RAISES CONTROLLING QUESTIONS OF LAW ........................................................... 7

B. THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION. ...................................................................... 10

C. IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION BY FORECLOSING BURDENSOME, TIME-CONSUMING DISCOVERY AND TRIAL TIME .............................................. 16

D. ADDITIONAL FACTORS STRONGLY SUPPORT INTERLOCUTORY APPEAL................................................... 18

CONCLUSION ................................................................................. 19

APPENDIX ............................................................................... App. i

# TABLE OF AUTHORITIES

Cases

*American Telephone and Telegraph Co. v. United States*,
124 F.3d 1471 (Fed. Cir. 1997) ........ 18

**APCC Services, Inc. v. Sprint Communications Co.*,
297 F. Supp. 2d 90 (D.D.C. 2003),
*permission to appeal granted*,
2004 WL 434083 (D.C. Cir. Mar. 1, 2004) ........ 8, 11, 16, 17

**Banks v. Office of the Senate Sergeant-at-Arms*,
471 F.3d 1341 (D.C. Cir. 2006) ........ 8

*Boster v. Reliance Standard Life Insurance Co.*,
959 F. Supp. 2d 9 (D.D.C. 2013) ........ 16

**Carr Park, Inc. v. Tesfaye*,
229 F.3d 1192 (D.C. Cir. 2000) ........ 11

*Davis v. PBGC*,
571 F.3d 1288 (D.C. Cir. 2009) ........ 11

*Falik v. United States*,
343 F.2d 38 (2d Cir. 1965) ........ 18

*Genentech v. Novo Nordisk S/A*,
907 F. Supp. 97 (S.D.N.Y. 1995) ........ 8

*GTE New Media Services v. Ameritech Corp.*,
44 F. Supp. 2d 313 (D.D.C. 1999) ........ 17

*Harris v. Koenig*,
602 F. Supp. 2d 39 (D.D.C. 2009) ........ 13

*Authorities chiefly relied upon are marked with an asterisk.

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999) ........ 12

*In re Baker & Getty Financial Services*,
954 F.2d. 1169 (6th Cir. 1992) ........ 7

*In re Cement Antitrust Litigation*,
673 F.3d 1020 (9th Cir. 1982) ........ 7

*In re Duplan Corp.*,
591 F.2d 139 (2d Cir. 1978) ........ 7

*Judicial Watch, Inc. v. National Energy Policy Development Group*,
233 F. Supp. 2d 16 (D.D.C. 2002) ........ 7

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974) ........ 8

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. 1990) ........ 8, 11

*Korotynska v. Metropolitan Life Insurance Co.*,
474 F.3d 101 (4th Cir. 2006) ........ 16

*Massachusetts Mutual Life Insurance Co. v. Russell*,
473 U.S. 134 (1985) ........ 13

*Mauser v. Raytheon Co. Pension Plan for Salaried Employees*,
239 F.3d 51 (1st. Cir. 2001) ........ 16

*Murchison v. Murchison*,
180 F. App'x 163 (D.C. Cir. 2006) ........ 12, 13

*Nachman Corp. v. PBGC*,
446 U.S. 359 (1980) ........ 11

*Ogden v. Blue Bell Creameries U.S.A., Inc.*,
348 F.3d 1284 (11th Cir. 2003) ........ 16

**Paulsen v. CNF, Inc.*,
559 F.3d 1061 (9th Cir. 2009) .......................................................... 13, 14

*Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc.*,
86 F.3d 656 (7th Cir. 1996) .......................................................................... 7

*Stephens v. U.S. Airways Group*,
555 F. Supp. 2d 112 (D.C.C. 2008) ................................................................ 13

*Stephens v. U.S. Airways Group*,
644 F.3d 437 (D.C. Cir. 2011) ......................................................................... 4

*Walker v. Pharmaceutical Research & Manufacturers of America*,
827 F. Supp. 2d 8 (D.D.C. 2011) .................................................................... 12

*Zalduondo v. Aetna Life Insurance Co.*,
845 F. Supp. 2d 146 (D.D.C. 2012) ........................................................... 13, 16

U.S. Codes

Title 28
Section 1292(b) ............................................................................... 3, 7, 18
Title 29
Section 1109 ....................................................................................... 13
Section 1302(a) .................................................................................... 14
Section 1322(b) .................................................................................... 14
Section 1341(c)(3)(B)(iii) ..................................................................... 4
Section 1342 ......................................................................................... 4
Section 1342(d)(3) ................................................................................ 13
*Section 1344(c) .................................................................................... 14
Section 1348 ......................................................................................... 4
Section 1361 ........................................................................................ 11

Other Authorities

16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
*Federal Practice & Procedure* § 3930 (3d ed. 2012 & Supp. 2016) ........ 8

PBGC ANNUAL REPORT (2016) ............................................................. 10, 12

29 C.F.R. § 4022.81(c)(4) .................. 15
29 C.F.R. § 4022.83 .................. 15



USCA Case #17-8001 Document #1659056 Filed: 02/02/2017 Page 7 of 97

## PRELIMINARY STATEMENT

As the district court has acknowledged, this is one of the rare cases that warrants interlocutory appeal. It presents controlling questions of first impression about the federal pension insurance program and the agency that administers it, Defendant Pension Benefit Guaranty Corporation ("PBGC"). The district court's unprecedented holdings, unless reversed at this stage, could evade appellate review and have severe consequences for the agency and the safety net it provides to pensioners.

The Plaintiffs are former Delta Air Line pilots (or their beneficiaries) who are participants in the Delta Pilots Retirement Plan ("Plan"). The Plan is terminated and PBGC became its statutory trustee under Title IV of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1301-1461 (2012 & Supp. II 2014). After PBGC determined the amount of the Plaintiffs' statutory benefits under their terminated plan, the Plaintiffs filed a six-count complaint challenging the agency's calculation of their benefits. Beyond the typical benefits challenge, the Plaintiffs also included a broad claim asserting that in determining their benefits, PBGC committed fiduciary breach by intentionally misinterpreting the law in order to reduce their benefits and maximize the agency's funds.

PBGC moved to dismiss the Plaintiffs' fiduciary breach claim on multiple grounds because they impermissibly seek:

(a) to recover more than the amount of their statutory benefits;

(b) individual relief (not relief on behalf of the plan);

(c) "disgorgement" of investment gains that purportedly accrued after their pension plan terminated; and

(d) relief for fiduciary breach that is duplicative of their other five counts for benefits.

On July 6, 2016, the district court issued a Memorandum Opinion and Order (the "Order") denying PBGC's motion to dismiss and authorizing the Plaintiffs to proceed with this unprecedented claim.

This is the first decision ever to hold that participants in a terminated plan may obtain multiple remedies against PBGC, even though participants in an *ongoing* plan would be limited to a single claim, for plan benefits. This is permitted under the Order even if it means that PBGC would pay the Plaintiffs much more than the statute allows, and from an improper source. If its errors of law are not reversed, the Order will spawn a new genre of lawsuits that purport to challenge the correctness of PBGC's benefit determinations, but instead—or in addition—seek huge recoveries on duplicative, unsupportable theories. That would distort PBGC's mandate to pay benefits under the statutory insurance program that Congress established. And if this claim is not addressed now by interlocutory appeal, the Order would stand as precedent even if the agency ultimately prevails on the merits.

The Order raises controlling questions of law about which there are substantial grounds for difference of opinion. The statutory insurance program does not allow payment of *more* than Title IV benefits, or provide for individual relief—or duplicate relief—for fiduciary breach. And the statute explicitly provides that any post-plan-termination investment gains or losses inure solely to PBGC; thus, plan participants cannot pursue recovery of gains, just as they are not charged with losses.

After issuing the Order, and after considering PBGC's contested motion to reconsider the Order or certify it for interlocutory appeal, the district court found that it meets the requirements of 28 U.S.C. § 1292(b). The court noted the "dearth of controlling precedent," and PBGC's "credible contention that the ERISA does not permit the plaintiffs to pursue this claim." Doc. 61 (Order granting motion for certification), Petition Exhibit 3 at App. 28, App. 29.[1] The district court also noted that immediate appeal could spare the Plaintiffs the "substantial attorney's fees" associated with "potentially protracted discovery involving the claims of over 1700

[1] All "Doc." cites herein refer to docket numbers in the district court action, No. 1:15-cv-01328-RBW (D.D.C.). The Order of July 6, 2016 (Docs. 52 and 53) and the orders granting the motion for certification and certifying interlocutory appeal (Docs. 61 and 62, respectively) are attached to this Petition as Exhibits 1 to 4, App. 1 to 32.

elderly plaintiffs." *Id.* at App. 29.[2] And the fiduciary breach claim at issue here is the only one of Plaintiffs' six claims that would be the subject of discovery; it is undisputed that the Plaintiffs' remaining five claims challenging the correctness of PBGC's benefit determinations are reviewed on the administrative record.[3] Accordingly, interlocutory review will materially advance the ultimate termination of the litigation. PBGC asks the Court to accept this case to review these issues of first impression that are critical to the agency's continued implementation of the federal pension insurance program.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Delta Air Lines, Inc. ("Delta") was the contributing sponsor of the Plan. Doc. 45 (First Amended Complaint) at ¶ 3. After Delta filed for Chapter 11 bankruptcy protection, the Plan was terminated by agreement effective September 2, 2006. *See* 29 U.S.C. §§ 1341(c)(3)(B)(iii); 1342; 1348. Doc. 41-1 (Declaration of Nicole Williams) at ¶ 4. PBGC became the statutory trustee of the Plan, for

---

[2] ERISA does not authorize the award of attorneys' fees in actions against PBGC. *See Stephens v. U.S. Airways Grp., Inc.*, 644 F.3d 437, 442 (D.C. Cir. 2011).

[3] In the Order, the district court stayed proceedings on the fiduciary breach claim but noted that "the remainder of the plaintiffs' case can proceed under the usual procedure for review of agency action under the APA in this District," and instructed the parties to file joint proposed schedule for filing administrative record and briefing dispositive motions regarding the remaining claims in the First Amended Complaint. Petition Exhibit 3 at App. 30.

which promised benefits exceeded assets by $2.5 billion as of the date that the Plan terminated. *Id.* at ¶ 5 and Exh. 1 thereto, App. 1. Nearly $800 million of these unfunded benefits—for which there are no Plan assets—are guaranteed and will be paid by PBGC out of its insurance funds. *Id.*

The Plaintiffs are nearly 1,700 participants of the Plan and their beneficiaries. Doc. 45 (First Amended Complaint) at ¶ 1. After the Plan terminated, PBGC issued benefit determinations to all participants informing them of the amount of their Title IV pension benefits. Some of the Plaintiffs appealed these benefit determinations to PBGC's Appeals Board, and on September 27, 2013, the Appeals Board rendered the final agency decision. Doc. 45-14 (Exh. G to First Amended Complaint, Consolidated Appeal Submission); Doc. 45-15 (Exh. H to First Amended Complaint, PBGC Appeals Board Decision).

The Plaintiffs then filed this action under 29 U.S.C. § 1303(f) in the Northern District of Georgia, challenging the Appeals Board's decision. Doc. 1 (Complaint in N.D. Ga.). PBGC moved to transfer the case for improper venue and moved to dismiss the Plaintiffs' fiduciary breach claim, which was then Claim 5. Doc. 13 (PBGC's Motion to Dismiss). The Georgia court granted PBGC's motion to transfer the case to the District of Columbia, but did not rule on PBGC's motion to dismiss the fiduciary breach claim. Doc. 31.

After transfer to the District of Columbia, the Plaintiffs moved to amend the

complaint, including expansion of their fiduciary breach claim. Doc. 40 (Motion to Amend). PBGC opposed, but the district court granted the motion to amend. Doc. 41 (PBGC Opposition); Doc. 44 (Order granting motion to amend). The Plaintiffs thereafter filed their First Amended Complaint—the current version—seeking relief that includes an award of benefits; an injunction against PBGC; setting aside all PBGC regulations applied in circumstances that violate ERISA; an accounting of statutory insurance premiums; a constructive trust for premiums paid to remedy fiduciary breach; monetary relief to redress fiduciary breach; disgorgement and surcharge to redress unjust enrichment from investment income; attorneys' fees; other expenses; and costs. Doc. 45 (First Amended Complaint) at pp. 124-126.

On December 7, 2015, PBGC moved to dismiss the Plaintiffs' fiduciary breach claim, which they had renumbered from Claim 5 to Claim 1. Doc. 46 (PBGC motion to dismiss). Plaintiffs opposed. Doc. 47. On July 6, 2016, the district court issued the Order, denying PBGC's motion to dismiss. Doc. 52 (Order), Petition Exhibit 1, App. 1; Doc. 53 (Memorandum Opinion), Petition Exhibit 2, App. 2.[4] PBGC moved for reconsideration or certification of the Order

[4] The Order granted PBGC's motion to strike the Plaintiffs' jury demand and their request for attorneys' fees, which are not authorized by statute (*see* n.2, *supra*). Doc. 52, App. 1; Doc. 53 at App. 3.

for interlocutory appeal. On January 23, 2017, the district court certified the Order for interlocutory appeal, finding that it meets the requirements of 29 U.S.C. § 1292(b). Doc. 61 (Order granting motion for certification), Petition Exhibit 3, App. 23; Doc. 62 (Order certifying interlocutory appeal), Petition Exhibit 4, App. 31.

## ARGUMENT

### A. THE DECISION BELOW RAISES CONTROLLING QUESTIONS OF LAW.

The Order raises four controlling questions of law:

1. Whether individuals can bring fiduciary breach claims against PBGC that duplicate their benefit claims;

2. Whether participants can recover more from PBGC than the amount of their Title IV benefits;

3. Whether Title IV allows relief against PBGC for alleged fiduciary breach on an individual, rather than plan-wide, basis; and

4. Whether 29 U.S.C. § 1344(c) precludes the remedy of disgorgement (and surcharge) of post-plan-termination investment gains.

A controlling question of law is one that "could materially affect the course of litigation with resulting savings of the court's or the parties' resources."[5]

---

[5] *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002)(citation omitted); *accord Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 658–59 (7th Cir. 1996); *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 (6th Cir. 1992); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982); *In re Duplan Corp.*, 591 F.2d 139, 148

Interlocutory review is warranted by the "interest in avoiding excessively burdensome and expensive litigation." *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 101 (D.D.C. 2003), *permission to appeal granted*, 2004 WL 434083 (D.C. Cir. Mar. 1, 2004). Another key indicator of a controlling question is "[t]he impact that the appeal will have on other cases." *APCC Servs.,* 297 F. Supp. 2d at 96. A determination may be controlling if it is "likely to have precedential value for a large number of other suits" or "affect a large number of cases."[6] Moreover, certification is warranted when a ruling might be of "serious, perhaps irreparable consequence" to a litigant or "the effect of error may be serious and remain uncorrected by appeal from a final judgment entered long in the future." *Banks v. Office of the Senate Sergeant-at-Arms*, 471 F.3d 1341, 1345 (D.C. Cir. 2006) (citations omitted). All of these factors are present here.

---

n.11 (2d Cir. 1978); *Katz v. Carte Blanche Corp*., 496 F.2d 747, 755, (3d Cir. 1974); 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3930 at 426 (3d ed. 2012 & Supp. 2016) ("A steadily growing number of decisions, however, have accepted the better view that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants.").

[6] *APCC Servs.*, 297 F. Supp. 2d at 96, citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) and *Genentech, Inc. v. Novo Nordisk A/S*, 907 F. Supp. 97, 99 (S.D.N.Y. 1995).

First, the district court's ruling in this case would materially affect the course of this litigation, and consume the court's and parties' resources. As the district court noted, immediate appeal could spare the Plaintiffs the "substantial attorney's fees" associated with "potentially protracted discovery involving the claims of over 1700 elderly plaintiffs." Order granting motion for certification, Petition Exhibit 3, at App. 29. The scale of this discovery cannot be gainsaid. For example, the Plaintiffs allege that PBGC "manipulated the asset allocation process in such a manner as to create hundreds of millions of dollars of investment returns to itself, at Plaintiffs' expense, in contravention of its fiduciary duties." Doc. 45 (First Amended Complaint) at ¶ 71. They challenge PBGC's production of information, its use of contractors, and its appeal process, among other things. *See infra* at 17. Accordingly, the Plaintiffs' discovery demands, if the fiduciary breach claim goes forward, are likely to be massive. Because it is undisputed that the Plaintiffs' fiduciary breach claim is the only claim for which discovery and a trial could be permitted, dismissal of that claim would have a huge impact on this case.

More broadly, the district court's Order—permitting the Plaintiffs to seek individual relief against PBGC for alleged fiduciary breach for more than the amount of their statutory benefits—would have serious consequences for PBGC in

other cases. PBGC becomes trustee of more than 100 plans per year on average.[7] The district court's ruling could lead to litigation by participants alleging fiduciary breach, seeking individual relief, and seeking extra-statutory amounts. Even participants pursuing routine benefit claims would be encouraged to assert duplicative fiduciary breach claims for greater amounts, including "investment gains." Moreover, if the Plaintiffs' fiduciary breach allegations proceeded to trial and PBGC ultimately prevailed, the district court's ruling would evade appellate review, and stand as an open invitation for similar lawsuits. The four issues raised in the Order are classic examples of controlling questions of law.

## B. THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION.

No decision in PBGC's forty-two years of existence has subjected the agency to individual recoveries in excess of Title IV benefits. As the district court noted, there is a "dearth of controlling precedent," and PBGC has a "credible contention that the ERISA does not permit the plaintiffs to pursue this claim." Doc 61 (Order granting motion for certification), Petition Exhibit 3 at App. 28, App. 29.

Because the Order conflicts with numerous other cases and goes much further than any previous decision, and because it creates so much new exposure

---

[7] As of September 30, 2016, there were 4,769 single-employer plans trusteed or pending trusteeship by PBGC. PBGC Annual Report 2016 ("Annual Report") at 29, *available at* http://www.pbgc.gov/Documents/2016-Annual-Report.pdf.

for the agency, it unquestionably generates substantial grounds for difference of opinion. These fundamental issues about the operation of the federal insurance program are "difficult and of first impression" by their very nature. *Klinghoffer*, 921 F.2d at 25.

Moreover, a substantial ground for difference of opinion exists where a decision "could be seen as in tension with the plain wording of the statute." *See Carr Park, Inc. v. Tesfaye*, 229 F.3d 1192, 1193-94 (D.C. Cir. 2000) (describing district court's holding). And a substantial ground for difference of opinion exists "where a court's challenged decision conflicts with decisions of several other courts." *APCC Servs.*, 297 F. Supp. 2d at 98. Both of these criteria are present here.

First, the Order conflicts with the plain language of Title IV. The benefits that PBGC may pay to participants in terminated plans are explicitly "subject to the limitations and requirements" in the statute, which are numerous and complex. 29 U.S.C. § 1361; *see Nachman Corp. v. PBGC*, 446 U.S. 359, 361 (1980) (ERISA is "comprehensive and reticulated"). As this Court recognized in *Davis v. PBGC*, "[w]hen a plan is underfunded, the PBGC's benefit payments are subject to statutory and regulatory limits." 571 F.3d 1288, 1290-91 (D.C. Cir. 2009). Notwithstanding this clear statutory language, the Order would allow the Plaintiffs to seek more than their Title IV benefits, violating a core principle of defined

benefit pension plans—that the participant has a right only to his or her full benefit, not a right to plan assets or earnings on assets. *See, e.g., Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999). In the other counts of the Complaint, the Plaintiffs challenge PBGC's determination of the amount of their Title IV benefits, and if they prevail, they will receive a higher amount of statutory benefits. But if they do not prevail, they cannot receive benefits above the statutory limit through the back door of a fiduciary breach claim.

These statutory limitations are necessary because PBGC has limited funds.[8] Payments that exceed the statutory limits would divert insurance funds from participants in other plans, or plan assets available for other participants in the same plan. The idea that participants alleging fiduciary breach can recover more from PBGC than their statutory benefits is a dramatic reversal of established legal principles that would disrupt the administration of the insurance program.

Second, the Order conflicts with the many cases holding that an ERISA plaintiff may not recover individually for a breach of fiduciary duty, but only on behalf of the plan. *See, e.g., Murchison v. Murchison*, 180 F. App'x 163 (D.C. Cir. 2006), *Walker v. Pharm. Research & Mfrs. of Am.*, 827 F. Supp. 2d 8, 16 (D.D.C.

---

[8] Contrary to the Plaintiffs' allegations of "massive investment gains," PBGC's current deficit is over $20 billion for single-employer plans alone. The current deficit for the multiemployer program is even higher. Annual Report at 26.

2011); *Zalduondo v. Aetna Life Ins. Co.*, 845 F. Supp. 2d 146, 154 (D.D.C. 2012); *Harris v. Koenig*, 602 F. Supp. 2d 39, 50 (D.D.C. 2009). Liability for breach of fiduciary duty under ERISA, including liability against PBGC, is governed by 29 U.S.C. § 1109. *See Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1073 (9th Cir. 2009); *Stephens v. US Airways Group*, 555 F. Supp. 2d 112, 117-19 (D.D.C. 2008). Both the Supreme Court and the D.C. Circuit have made clear that this provision "subjects a fiduciary to liability only to an ERISA *plan*—not to a plan *participant*." *Murchison*, 180 F. App'x at 164 (emphasis in original); *accord Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985).

Title IV of ERISA narrows, rather than expands, Title I's provisions on fiduciary responsibility,[9] and this is the first time a court has held that section 1109 does not apply to suits against PBGC. The district court's sweeping conclusion that an individual remedy for fiduciary breach is available under Title IV vitiates the long-held understanding of how fiduciary breach claims apply to defined benefit pension plans. *See, e.g., Paulsen*, 559 F.3d at 1073 (recovery for fiduciary breach inures to the benefit of the pension plan, rather than the individual participants).

---

[9] *See* 29 U.S.C. § 1342(d)(3) (a statutory trustee under Title IV is a fiduciary "except to the extent that the provisions of [Title IV of ERISA] are inconsistent with the requirements applicable under [the fiduciary provisions of Title I of ERISA]").

Third, the Order allows Plaintiffs to pursue a claim for disgorgement of purportedly "unjust enrichment" by PBGC based on the agency's post-plan-termination investment gains on Plan assets. But the statute expressly forbids this, providing that "[a]ny increase or decrease in the value of the assets of a single-employer plan occurring after the date on which the plan is terminated shall be credited to, or suffered by, [PBGC]." 29 U.S.C. § 1344(c). As the Ninth Circuit declared in *Paulsen*, "[29 U.S.C. § 1344(c)] also mandates that a post-termination increase or decrease in the CFC Plan's assets be credited or suffered by PBGC." 559 F.3d at 1073.

The district court here based its contrary holding on the availability of "appropriate equitable relief" under Title IV. Order, Petition Exhibit 2 at App. 15. But equitable remedies do not exist in a vacuum, and require a cognizable right before they can be exercised. For fiduciary breach, Title IV refers solely to Title I. And Title IV does not authorize unlimited equitable remedies unmoored to its statutory terms, context, and structure. Indeed, Congress showed its contrary intent by placing explicit limits on PBGC's payment of benefits and mandating that PBGC both provide for the uninterrupted payment of benefits and maintain premiums at the lowest level necessary to carry out its mission. 29 U.S.C. §§ 1302(a), 1322(b).

The district court also made confusing statements about section 1344(c) that urgently require clarification. The court initially stated that the Plaintiffs' fiduciary breach claim permissibly "seeks to recoup the ill-gotten investment returns on Plan benefits that the plaintiffs claim should have been distributed to them, Am Compl. ¶ 72, not, as [PBGC] characterizes the claim, to divert from [PBGC] any gains (or losses) from assets <u>properly</u> held in the Plan." Order, Petition Exhibit 2, at App. 16 (emphasis in original). Then, in the Order granting PBGC's motion to certify, the district court stated that it was permitting the Plaintiffs to seek "disgorgement as a remedy for [PBGC's] alleged unjust enrichment based on funds that would otherwise have been remitted to the plaintiffs and not retained in the Plan had [PBGC] not committed the alleged fiduciary breaches." Order, Petition Exhibit 3 at App. 28. But neither characterization of Plaintiffs' fiduciary breach allegations states a cognizable claim. As to the first, the statutory requirement that investment gains and losses are borne solely by PBGC does not depend on any determination of whether they are "properly held," whatever that may mean. As to the second, if PBGC is ultimately adjudged to have underpaid the benefits of *any* participant in any case, it pays the additional amounts *plus interest*, pursuant to the agency's longstanding regulation. 29 C.F.R. §§ 4022.81(c)(4), 4022.83. There is no need and no place for "disgorgement" of alleged "investment gains" in that calculation.

And allowing such an analysis to proceed could open the floodgates to requests for "disgorgement" on a routine basis.

Finally, the Order allows the Plaintiffs to pursue a claim for fiduciary breach against PBGC that duplicates their benefit claims. Such doubling of participants' causes of action directly contradicts a long line of cases rejecting such repackaged benefit claims under Title I. *See, e.g.*, *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 102–03 (4th Cir. 2006); *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003); *Mauser v. Raytheon Co. Pension Plan for Salaried Emps.*, 239 F.3d 51, 58 (1st Cir. 2001); *Boster v. Reliance Standard Life Ins. Co.*, 959 F. Supp. 2d 9, 29-31 (D.D.C. 2013); *Zalduondo*, 845 F. Supp. 2d at 155. There is absolutely no rationale for allowing duplicate remedies against PBGC that are impermissible against an ongoing plan. In sum, substantial grounds for difference of opinion exist on four issues that are critical to this federal program.

### C. IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION BY FORECLOSING BURDENSOME, TIME-CONSUMING DISCOVERY AND TRIAL TIME.

Interlocutory appeal is appropriate when "[a]n immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that [the court's] rulings are reversed." *APCC Servs.*, 297 F. Supp. 2d at 100, *permission to appeal granted*, 2004 WL 434083 (D.C. Cir. Mar.

1, 2004). In *APCC Services*, the case presented "daunting discovery issues," and warranted interlocutory review "because [of] the interest in avoiding excessively burdensome and expensive litigation." *Id.* at 100-01. *See also GTE New Media Servs., Inc. v. Ameritech Corp.,* 44 F. Supp. 2d 313, 316 (D.D.C. 1999) ("All indications thus far indicate that to reach final judgment the parties will probably undergo voluminous and burdensome discovery and possibly months of trial. To learn after that point, on appeal, that the parties should not have proceeded so far, and at such expense, would make the issue effectively unreviewable on appeal from final judgment.").

In this case, the Plaintiffs would almost certainly propound extensive discovery requests in an attempt to support their fiduciary breach allegations. For example, they challenge PBGC's information production, its appeal process, its use of contractors, and its purported "manipulat[ion]" of the benefit determination process to "create hundreds of millions of dollars of investment returns to itself." Doc. 45, First Amended Complaint, ¶¶ 66-72. These are expansive subject areas with extensive documentation beyond just this case. And because of the sensitive nature of this material, including that relating to PBGC's internal processes, time-consuming discovery disputes may well arise.

In addition to requiring a burdensome discovery phase, allowing the fiduciary breach claim to proceed could result in a costly trial with significant

expert testimony. Should this Court disagree with the district court about dismissing the fiduciary breach claim, however, the district court could rule on the merits of the remaining claims based on the administrative record, via motions for summary judgment, a course that the district court is beginning to undertake even now. *See* n. 3, *supra*. Accordingly, immediate appeal would unquestionably materially advance the termination of this litigation.

### D. ADDITIONAL FACTORS STRONGLY SUPPORT INTERLOCUTORY APPEAL.

In cases to which the federal government is a party, the Second Circuit has held that interlocutory appeal is especially appropriate when, in addition to the factors discussed above: (1) the issue is important to the administration of federal law; and (2) the district court denied a motion to dismiss, so that the failure to allow an appeal, if followed by victory for the government, might moot an issue that ought to be determined. *See Falik v. United States*, 343 F.2d 38, 39-40 (2d Cir. 1965). Likewise, other federal courts have exercised their discretion in favor of certifying cases for interlocutory appeal at the request of the federal government where the requirements of § 1292(b)(2) are met. *See, e.g., Am. Tel. & Tel. Co. v. United States,* 124 F.3d 1471 (Fed. Cir. 1997) (prospect of an extended trial and decision placing in doubt the legality of a large number of government contracts warranted interlocutory appeal).

All of these factors are present here. The issues decided in the Order are of critical concern to the federal pension insurance program, and absent an interlocutory appeal, any subsequent judgment in PBGC's favor could moot the issues on appeal, leaving PBGC subject to the district court's ruling in future cases.

## CONCLUSION

This Court should grant PBGC's petition for permission to appeal. The Plaintiffs seek disgorgement from a trust fund administered by a government agency that is essential to its program and operations. The district court's Order opening this government program to the threat of such an intrusive remedy is both extraordinary and unsupported by the statute. Prevailing at a later stage in the proceeding would bar PBGC from seeking to correct these rulings on appeal, and expenditure of extensive judicial and party resources may be avoided by allowing an interlocutory appeal.

Date: February 2, 2017

Respectfully submitted,

JUDITH R. STARR
General Counsel
KENNETH J. COOPER
Assistant General Counsel
PAULA J. CONNELLY
JOSEPH M. KRETTEK
Assistant Chief Counsels
MARK R. SNYDER
Attorney

PENSION BENEFIT GUARANTY
CORPORATION
1200 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 326-4400 ext. 3423
Facsimile: (202) 326-4112
snyder.mark@pbgc.gov &
efile@pbgc.gov
Attorneys for Defendant PBGC

**CERTIFICATE OF COMPLIANCE**

I, Mark R. Snyder, hereby certify, pursuant to Fed. R. App. P. 5(c)(1), that the word count of the Pension Benefit Guaranty Corporation's Petition for Permission to Appeal Under 28 U.S.C. § 1292(b) is 4380, excluding the parts of the petition exempted by Fed. R. App. P. 32(f). The petition was prepared using Microsoft Word 2013, and Petitioner's counsel has relied on the word count function of Microsoft Word 2013 to calculate the word count. The petition complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font.

Dated: February 2, 2017

Mark R. Snyder

**CERTIFICATE OF SERVICE**

I, Mark R. Snyder, certify that on February 2, 2017, true and correct copies of Pension Benefit Guaranty Corporation's Petition for Permission to Appeal Under 28 U.S.C. § 1292(b) were served by FedEx Priority Overnight on:

Miller & Chevalier Chartered
900 16th Street NW
Washington, DC 20006

Attn: Anthony F. Shelley
Timothy P. O'Toole
Michael N. Khalil

Mark R. Snyder

**APPENDIX**

# LIST OF EXHIBITS

Petition Exhibit 1,
Doc. 52 Order (on motion to dismiss) .................................................App. 1

Petition Exhibit 2,
Doc. 53 Memorandum Opinion (on motion to dismiss) ........................App. 2

Petition Exhibit 3,
Doc. 61 Order (granting motion for certification) ...............................App. 23

Petition Exhibit 4,
Doc. 62 Order Certifying Interlocutory Appeal..................................App. 31

Petition Exhibit 5,
List of Plaintiffs in First Amended Complaint ....................................App. 33

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

K. WENDELL LEWIS, et al.,

Plaintiffs,

v.

PENSION BENEFIT GUARANTY CORPORATION,

Defendant.

Civil Action No. 15-1328 (RBW)

# ORDER

In accordance with the Memorandum Opinion issued on this same day, it is hereby

**ORDERED** that Pension Benefit Guaranty Corporation's Motion to Dismiss and To Strike, ECF Nos. 45 & 46, is **GRANTED IN PART AND DENIED IN PART**. It is further

**ORDERED** that the defendant's motion to dismiss Claim One of the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is **DENIED**. It is further

**ORDERED** that the defendant's motion to strike the plaintiffs' demand for attorney's fees is **GRANTED**. It is further

**ORDERED** that the defendants' motion to strike the plaintiffs' demand for a jury trial is **GRANTED**. It is further

**ORDERED** that the defendants shall file their Answer to the Amended Complaint on or before July 28, 2016.

**SO ORDERED** this 6th day of July, 2016.

REGGIE B. WALTON
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| K. WENDELL LEWIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PENSION BENEFIT GUARANTY CORPORATION,<br><br>Defendant. | ) | Civil Action No. 15-1328 (RBW) |

# MEMORANDUM OPINION

The plaintiffs, approximately 1700 former airline pilots, initiated this action against defendant Pension Benefit Guaranty Corporation ("Corporation") under the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (2012) ("ERISA"), asserting claims of breach of fiduciary duty, denial of benefits, and violations of the Administrative Procedure Act ("APA"), and seeking certain declaratory and injunctive relief. See generally First Amended Complaint ("Am. Compl.") ¶¶ 1–13, 63–156. Currently pending before the Court is the Pension Benefit Guaranty Corporation's Motion To Dismiss and To Strike ("Def.'s Mot."), in which the Corporation seeks to dismiss the plaintiffs' breach of fiduciary duty claim (Claim One), and to strike the plaintiffs' demands for attorney's fees and for a jury trial.[1] Def.'s Mot. at 1. Upon consideration of the parties' submissions, the Court concludes that the Corporation's motion to

[1] Although the Corporation's motion also included a motion to strike the plaintiffs' demand for a jury trial, the plaintiffs have abandoned this demand, Plaintiffs' Opposition to Defendant's Motion To Dismiss and To Strike at 1 n.1 ("While the [Corporation] did not initially appear to object to the demand [for a jury trial], having now objected, there is no further reason to consider the demand or to address whether to strike it."), and the Court therefore need not address the substance of that initial challenge in this Memorandum Opinion.

dismiss Claim One of the Amended Complaint must be denied. However, the Court will grant the Corporation's motions to strike the attorney's fees and jury trial demands.[2]

## I. BACKGROUND

### A. The Corporation's Duties Under the ERISA

The ERISA was enacted in part to "ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds [had] been accumulated in the plans." Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 720 (1984). As part of this statutory goal, the ERISA created the Corporation—a component within the Department of Labor—to, inter alia, "provide for the timely and uninterrupted payment of pension benefits to participants and beneficiaries under plans to which this subchapter applies." 29 U.S.C. § 1302(a)(2). The Corporation "administers and enforces Title IV of [the] ERISA." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 637 (1990). As the Supreme Court explained:

> When a plan covered under Title IV terminates with insufficient assets to satisfy its pension obligations to the employees, the [Corporation] becomes trustee of the plan, taking over the plan's assets and liabilities. The [Corporation] then uses the plan's assets to cover what it can of the benefit obligations. The [Corporation] then must add its own funds to ensure payment of most of the remaining "nonforfeitable" benefits, i.e., those benefits to which participants have earned entitlement under the plan terms as of the date of termination.

LTV Corp., 496 U.S. at 637 (citing 29 U.S.C. §§ 1301, 1322, 1344).

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Pension Benefit Guaranty Corporation's Memorandum in Support of Its Motion To Dismiss and To Strike ("Def.'s Mem."); (2) the Plaintiffs' Opposition to Defendant's Motion To Dismiss and Strike ("Pls.' Opp'n"); (3) the Pension Benefit Guaranty Corporation's Reply in Support of Its Motion To Dismiss and To Strike ("Def.'s Reply"); (4) the Plaintiffs' Notice of Supplemental Authority Regarding Defendant's Motion To Dismiss Claim One ("Pls.' Notice"); and (5) the PBGC's Response to Plaintiffs' Notice of Supplemental Authority Regarding Defendant's Motion To Dismiss Claim One ("Def.'s Response to Pls.' Notice").

## B. Factual Background

This dispute originated with a September 2005 voluntary petition for bankruptcy filed by Delta Airlines, Inc. ("Delta"), which thereafter resulted in Delta not making contributions to the Delta Pilots Retirement Plan ("Plan"), a tax-qualified deferred benefit plan under the ERISA and the Internal Revenue Code. Am. Compl. ¶¶ 28, 30, 33. The plaintiffs, former Delta pilots (or their spouses or estate executors) are participants and beneficiaries under the Plan. Id. ¶¶ 2, 29. Delta's post-bankruptcy negotiations with the pilots' union[3] regarding the Plan's termination, id. ¶ 33, yielded an agreement in which the union "would receive $650 million in notes and a $2.1 billion allowed general non-priority unsecured claim . . . , which Delta and [the union] intended to be used to 'replace unfunded benefits under the . . . Plan by using the proceeds to fund follow-on retirement plans and other payments or distributions to [active] pilots," id. ¶ 34 (second alteration in original) (quoting Am. Compl., Exhibit ("Ex.") A, at 2).

The Corporation objected to the proposed agreement between Delta and the pilots' union, asserting that it was "designed in substantial part to skirt [ERISA's] safeguards." Id. ¶ 35 (quoting Am. Compl., Ex. A, at 14). These safeguards are achieved through a six-tiered allocation scheme, in which benefits under a plan such as the Plan here are paid in order of statutory priority, which the Court will refer to as Categories 1 through 6. See id. ¶ 19; see also 29 U.S.C. § 1344(a)(1)–(6) (setting forth the order of priority a plan administrator is required to apply when allocating to participants the value of assets in a single-employer plan). Under the circumstances present here, "[Category 3] is the highest priority category . . . [under which] benefits are reserved for those participants who were retirement-eligible at least three years prior to a plan's termination, under the plan provisions as they existed five years prior to plan

[3] The pilots were represented by the Air Line Pilots Association. See Am. Compl. ¶ 27.

termination." Am. Compl. ¶ 19. The proposed agreement between Delta and the pilots' union allegedly would have "improperly allowed funds which should properly go to the [Corporation] in connection with [the] ERISA's priority allocation scheme to leave the control of the plan sponsor/control group and thereby to fund pension benefits outside of [the] ERISA's asset allocation scheme[] . . . ." Id. ¶ 35 (citing Am. Compl., Ex. A, at 14–15). "In essence, the [proposed agreement] would allow Delta and [the pilots' union] to turn the asset allocation scheme on its head, putting younger active workers to the front of the line while relegating retirees living on a fixed income to the back." Id.

Over the Corporation's objections, the bankruptcy court approved the agreement between Delta and the pilots' union, and the Corporation "appealed [that] ruling to the district court." Id. ¶ 36. However, the Corporation later "withdrew" the appeal following the December 4, 2006 execution of a settlement agreement between Delta and the Corporation. Id. ¶ 39. Under the settlement agreement, the Corporation "received $225 million in notes, and a $2.2 billion unsecured bankruptcy claim." Id. On December 20, 2006, the bankruptcy court approved the settlement agreement between Delta and the Corporation. Id. ¶ 41. The Plan "was retroactively terminated as of September 2, 2006 . . . , and the [Corporation] became the [Retirement] Plan's Trustee as of December 31, 2006." Id. (italics omitted). The Corporation "obtained additional recoveries from Delta, which the [Corporation] initially valued as being worth $1,279,423." Id. ¶ 45. The plaintiffs allege that they should have received a portion of these recoveries before active pilots, but represent that this did not occur because

> by placing the benefits of active pilots (not yet in pay status) ahead of [Category 3] retirees (already in pay status)[,] the [Corporation] was able to corrupt the statutory recovery ratio by ensuring that hundreds of millions of dollars remained, undiluted, within the agency's trust fund in order to maximize the [Corporation's] investment returns.

Id.

As trustee of the trust fund that held the Plan's assets, the Corporation initially valued those assets at approximately $1.984 billion and calculated that the Plan's Category 3 liabilities were approximately $2.13 billion, "such that [Category 3] liabilities were 93% funded by the [Retirement] Plan's assets." Id. ¶¶ 42–43. The Corporation also determined that the Plan's "PC4" or Category 4 liabilities were $761,904,660. Id. ¶ 44. The Corporation started making benefits payments under the Plan, but "[t]hose benefits were significantly less than the vested pension benefits the [plaintiffs] had been entitled to receive under the Plan and [the] ERISA." Id. ¶ 46. In making its benefits determinations, the Corporation was allegedly motivated by

> strong incentives to minimize and delay payments to participants from the trust fund, and to allocate assets away from retirement eligible participants towards younger participants, all in an effort to manipulate the asset allocation scheme in order to maximize investment returns on the trust fund and further its own financial wellbeing.

Id. ¶ 23.

The Corporation "maintained that Plan participants were unable to challenge [its] benefit determinations until the [Corporation] issued its final benefit determinations." Id. Between 2010 and 2012,

> the [Corporation] began mailing final benefit determination letters to Plan participants, informing them of the [Corporation's] final determinations (as insurer and trustee) of any guarantee funds they were entitled to under ERISA § 4022, any asset allocation payments they were entitled to under ERISA § 4044, and any recovery allocation they were entitled to under ERISA § 4022(c).

Id. ¶ 47.

Each plaintiff had forty-five days to appeal the Corporation's final benefit determination. Id. ¶ 49. The plaintiffs allege that the Corporation refused to extend the forty-five-day deadline "until its own internal records confirmed that a final benefit determination had issued." Id. ¶ 51.

"Consequently, over 300 Plan participants who appealed the [Corporation's] determinations were later deemed 'untimely,' many missing the [Corporation]'s . . . 45-day deadline by a matter of days," id., although some of these "untimely" designations were reversed for "good cause," id. n.13.

In addition, although the plaintiffs in May 2010 requested all information relied upon by the Corporation in reaching its final benefit determinations, only a "fraction" of that information had been produced by October 2011, prompting "a group of 1,784 participant, most of whom are [the plaintiffs] in this action, [to] file[] a consolidated appeal of the [Corporation's] benefit determinations under the Plan. Id. ¶ 53. That appeal was resolved by a September 2013 decision issued by the Corporation's Appeals Board that largely upheld the Corporation's final determinations. Id. ¶ 55; see generally id., Ex. H (Appeals Board decision) at 6 (summarizing the Appeals Board's conclusions). The Appeals Board decision constituted final agency action, id., Ex. H (Appeals Board decision) at 6, and this lawsuit was then initiated.

## II. STANDARD OF REVIEW

For a complaint to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint must state a facially plausible claim for recovery. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To satisfy this requirement, the court must find that the complaint is sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555; see Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting Twombly, 550 U.S. at 570)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

"In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the non-moving party and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." Armenian Assembly of Am., Inc. v. Cafesjian, 597 F. Supp. 2d 128, 133–34 (D.D.C. 2009). However, legal conclusions masquerading as factual allegations are not enough to survive a motion to dismiss. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). Although the Court must, in general, limit its review to the allegations in the complaint, it may consider "documents upon which the complaint necessarily relies even if the document is produced not by the plaintiff in the . . . complaint but by the defendant in a motion to dismiss." Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting Hinton v. Corr. Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).

## III. ANALYSIS

### A. The Breach of Fiduciary Duty Claim (Claim One)

#### 1. Whether the Fiduciary Breach Claim Is Impermissibly Duplicative

The Corporation argues that the plaintiffs' breach of fiduciary duty claim under the ERISA is impermissibly duplicative of their claim for re-allocation of Plan benefits elsewhere in the Amended Complaint. Def.'s Mem. at 18. Claim One of the Amended Complaint alleges that the Corporation breached its fiduciary obligations under the ERISA by: (1) seeking to withhold or delay the production of information critical to the understanding of the [Corporation's] benefit determination and asset allocation choices," Am. Compl. ¶ 66; (2) denying the plaintiffs an opportunity to lodge an informed appeal of the Corporation's final determination, id. ¶ 67; (3)

"allowing its agency litigation counsel to advise its [A]ppeals [B]oard, and refusing to disclose the contacts between the two groups," id. ¶ 68; (4) outsourcing "many of its trustee responsibilities to independent contractors who lack[ed] the requisite competence or experience" to perform those duties adequately, then failing to monitor and remedy their inadequate performance, see id. ¶¶ 69–70; and (5) "manipulat[ing] the asset allocation process in such a manner as to create hundreds of millions of dollars of investment returns to itself, at [the plaintiffs'] expense," id. ¶ 71. As a result of these alleged fiduciary breaches, the plaintiffs contend that "the [Corporation] has unjustly earned massive investment returns off of assets that should have been timely allocated to [the p]laintiffs, and the [Corporation] should be required to disgorge itself of this unjust enrichment." Id. ¶ 72. But in addition to asserting these breaches of fiduciary duty, the Corporation notes that the plaintiffs have also pleaded, in Claims Two through Five of the Amended Complaint, various challenges to the Corporation's asset allocation and benefits determinations under the ERISA. See generally id. ¶¶ 73–150 (challenging the Corporation's prioritization and allocation of benefits due to the plaintiffs).

In support of its argument that the plaintiffs' fiduciary breach claim is impermissibly duplicative, the Corporation relies on this Court's observation in Wright v. Metropolitan Life Insurance Co. that the majority of Circuits presented with a claim for breach of fiduciary duty and a separate claim for benefits under the ERISA "have held that a breach of fiduciary duty claim cannot stand where a plaintiff has an adequate remedy through a claim for benefits under § [1132](a)(1)(B)." 618 F. Supp. 2d 43, 55 (D.D.C. 2009) (Walton, J.) (quoting Clark v. Feder Semo & Bard, P.C., 527 F. Supp. 2d 112, 116 (D.D.C. 2007)). To date, no judge in this district court has deviated from that conclusion. See Boster v. Reliance Standard Life Ins. Co., 959 F. Supp. 2d 9, 31 (D.D.C. 2013) (denying amendment of the plaintiff's complaint to add a breach of

fiduciary duty claim as futile because the only alleged injury resulting from the alleged breach was a loss of benefits, and "[t]he Court ha[d already] provided an adequate remedy for [the plaintiff's] loss of benefits" pursuant to the plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1), rendering "[a]ny further equitable relief . . . inappropriate"); Zalduondo v. Aetna Life Ins. Co., 845 F. Supp. 2d 146, 155 (D.D.C. 2012) (concluding that equitable relief pursuant to § 1132(a)(3) was not appropriate because "[t]he only harm alleged in [the complaint]—that is, the harm suffered by [the plaintiff] through Aetna's allegedly improper denial of her [benefits] request . . . is adequately provided for in the denial-of-benefits claim brought pursuant to § 1132(a)(1)(B)); Clark v. Feder, Semo & Bard, P.C., 808 F. Supp. 2d 219, 225–26 (D.D.C. 2011) (holding that the plaintiff "must choose" whether to proceed under a claim for benefits § 1132(a)(1)(B) or under a fiduciary breach claim under § 1132(a)(3)); Kifafi v. Hilton Hotels Ret. Plan, 616 F. Supp. 2d 7, 39 (D.D.C. 2009) (the plaintiff's breach of fiduciary duty claim "must be dismissed because a plan participant cannot proceed with a breach of fiduciary duty claim under [§ 1132](a)(3) when relief is available under other remedial sections of ERISA." (citing, inter alia, Varity Corp. v. Howe, 516 U.S. 489, 515 (1996)). But see Moyle v. Liberty Mut. Ret. Benefit Plan, ___ F.3d ___, 2016 WL 2946271, at *10–11 (9th Cir. May 20, 2016) (recognizing that litigants may plead alternative theories of relief under 29 U.S.C. § 1132(a)(1)(B) and 1132(a)(3) so long as they do not obtain duplicate recoveries); Silva v. Metro. Life Ins. Co., 762 F.3d 711, 726 (8th Cir. 2014) ("We do not read Varity . . . to stand for the proposition that [the plaintiff] may only plead one cause of action to seek recovery of his son's supplemental life insurance benefits. Rather, we conclude [that] those cases prohibit duplicate recoveries when a more specific section of the [ERISA] . . . provides a remedy similar

to what the plaintiff seeks under the equitable catchall provision, § 1132(a)(3)."). The District of Columbia Circuit has not addressed the issue.

In opposition, the plaintiffs assert that they are pursuing their fiduciary breach claim under a different provision of the ERISA, 29 U.S.C. § 1303(f), not under § 1132(a), and therefore the cases cited by the Corporation are inapposite. Pls.' Opp'n at 22. The Court agrees that there are sufficient textual differences between the civil enforcement provisions of § 1132(a), which are applicable to ERISA fiduciaries other than the Corporation, as compared to § 1303(f), which is "the exclusive means for bringing actions against the [C]orporation," rendering analyses based on cases analyzing the former provision distinguishable from this case. In relevant part, § 1132(a) enumerates several avenues of relief, including a claim "to recover benefits due to [a plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" pursuant to § 1132(a)(1)(B), or "other appropriate equitable relief" under § 1132(a)(3). See 29 U.S.C. § 1132(a). The Supreme Court's decision in Varity Corp. allowed an individual claim for breach of fiduciary duty to proceed under § 1132(a)(3) because no other civil enforcement remedy under § 1132(a) was available based on the circumstances presented in that case. 516 U.S. at 515 ("The plaintiffs in this case could not proceed under the first subsection [of § 1132(a)] because they were longer members of the . . . plan [at issue] and, therefore, had no 'benefits due [them] under the terms of [the] plan.' § [1132](a)(1)(B). They could not proceed under the second subsection because that provision, tied to § [1109], does not provide a remedy for individual beneficiaries. . . . They must rely on the third subsection or they have no remedy at all. We are not aware of any ERISA-related purpose that denial of a remedy would serve. Rather, we believe that granting a remedy is consistent with the literal language of the statute, the [ERISA]'s

purposes, and pre-existing trust law.") (third and fourth alterations in original) (citation omitted)). In stark contrast, § 1303(f) is devoid of the several subparagraphs contained in § 1132(a), and instead authorizes only "any person . . . who is a participant or beneficiary, and is adversely affected by any action of the [C]orporation with respect to a plan in which such person has an interest . . . [to] bring an action against the [C]orporation for appropriate equitable relief . . . ." 29 U.S.C. § 1303(f)(1).

The plaintiffs assert that they "brought their case pursuant to § [1303](f)," and that "they could not even sue the [Corporation] under the provisions of § [1132] whatsoever." Pls.' Opp'n at 24. Thus, the plaintiffs themselves pursue their entire case—not merely their fiduciary breach claims—outside of the civil enforcement realm of § 1132, upon which the Corporation's "duplicative" argument relies. See id. Indeed, the Court's review of the allegations contained in Claims Two through Five reveals that the plaintiffs focus those claims on the Corporation's alleged failure to properly prioritize and calculate the allocation of assets in the terminated Plan in violation of 29 U.S.C. §§ 1322 and 1344, which are contained in Title IV of the ERISA and form part of the same ERISA subchapter that includes § 1303, cf. § 1303(f)(4) ("This subsection shall be the exclusive means for bringing actions against the corporation under this subchapter . . . ." (emphasis added)), and not upon any benefit allocation provision contained in Title I of the ERISA, wherein the separate civil enforcement provisions of § 1132 are found. See, e.g., Am. Compl. ¶ 76 (alleging in Claim Two that the Corporation's actions resulted in "Delta Pilots who were entitled to priority in the allocation of Plan assets – those in [Category] 3 – were deprived of pension benefits ERISA mandates that they receive, while those whom Congress placed further to the back of the line – those outside of [Category] 3 – received over $1.8 billion from Delta before the asset allocation process even began."); id. ¶¶ 86–101 (alleging

in Claim Three that the Corporation misapplied § 1344 by failing to account for congressionally-mandated increases to the limit of compensation that may be used to calculate benefits); id. ¶¶ 113–27 (alleging in Claim Four that the Corporation misapplied § 1344 by failing to account for congressionally-mandated increases in the amount of benefits that may be paid to plan participants in a given year); id. ¶¶ 131–49 (alleging in Claim Five that the Corporation, pursuant to its authority under 29 U.S.C. § 1362, incorrectly determined the ratio of recovered liabilities to be distributed to Plan participants and beneficiaries, as required by § 1322(c)). Because of the textual differences between § 1303(f) and § 1132(a), the Court agrees with the plaintiffs that the Corporation's challenge to the plaintiffs' fiduciary breach claims as duplicative of their other claims lacks merit.

**2. Whether the Relief Sought by The Plaintiffs in Claim One Is "Appropriate Equitable Relief" Under § 1303(f)**

Having concluded that the plaintiffs' fiduciary breach claim is not impermissibly duplicative of the plaintiffs' other ERISA claims, the Court now addresses whether the relief sought in Claim One of the Amended Complaint is "appropriate equitable relief" as required by § 1303(f). The plaintiffs allege that as a result of the breaches alleged in Claim One, the Corporation earned investment returns on undistributed benefits that should be disgorged. Am. Compl. ¶ 72. Further, the plaintiffs assert that, contrary to the Corporation's contention, any recovery on their breach of fiduciary duty claim may inure to them individually as opposed to the Plan at large. Pls.' Opp'n at 23–25. The threshold question for the Court to answer is whether the relief the plaintiffs seek, i.e., to recoup from the Corporation its alleged ill-gotten investment returns on assets that should have been distributed to the plaintiffs, constitutes a claim for compensatory damages or one for equitable relief. In resolving this question, the Court is "'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending

remedies not specifically authorized by its text." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002) (alteration in original) (quoting Mass. Mut. Life Ins. Co. v. Russell, 437 U.S. 134, 147 (1985)).

The Supreme Court in Mertens v. Hewitt Associates grappled with the legal-versus-equitable remedy distinction in its analysis of the phrase "appropriate equitable relief" in § 1132(a)(3).[4] See 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of legal relief. . . . And though we have never interpreted the precise phrase 'other appropriate equitable relief,' we have construed similar language . . . to preclude 'awards for compensatory or punitive damages.'" (citations omitted)). The Mertens decision established that "appropriate equitable relief" refers to "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." 508 U.S. at 256; see also CIGNA Corp. v. Amara, 563 U.S. 421, 439 (2011) ("We have interpreted the term 'appropriate equitable relief' in § [1132](a)(3) as referring to those 'categories of relief' that, traditionally speaking (i.e., prior to the merger of law and equity), 'were typically available in equity.'" (quoting Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 361 (2006), and Mertens, 508 U.S. at 256)). And, the Supreme Court in Harris Trust & Savings Bank v. Salomon Smith Barney, Inc. recognized that both restitution and disgorgement were remedies typically available in equity. 530 U.S. 238, 250 (2000) ("[I]t has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, . . . "the beneficiaries may then maintain an action for restitution of the property (if not already disposed

---

[4] As the Supreme Court generally "assume[s] that the same terms have the same meaning in different sections of the same statute," Barnhill v. Johnson, 503 U.S. 393, 406 (1992), the Court is persuaded that cases interpreting the meaning of the terms "appropriate equitable relief" in § 1132(a)(3)(B) may weigh heavily in the Court's analysis of the meaning of the same terms in § 1303(f). See also IBP, Inc. v. Alvarez, 546 U.S. 21, 33–34 (2005) (noting "the normal rule of statutory interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning").

of) or disgorgement of the proceeds (if already disposed of) . . . ." (citing, inter alia, Restatement (Second) of Trusts §§ 284, 291, 294, 295, 297)).

Moreover, the Supreme Court in Amara stated that a district court's

> injunctions requir[ing] the plan administrator to pay to already retired beneficiaries money owed to them under the plan . . . [in] the form of a money payment does not remove [the remedy] from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this type of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable."

563 U.S. at 441–42 (emphasis added) (quoting Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 464 (1939)). Following the Amara decision, the Seventh Circuit in Kenseth v. Dean Health Plan, Inc. recognized that a plaintiff's claim for "make-whole relief in the form of monetary compensation for a breach of fiduciary duty" could qualify as a form of "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3). 722 F.3d 869, 891–92 (7th Cir. 2013).

Here, the plaintiffs' breach of fiduciary duty claim alleges that, as a result of the Corporation's alleged breaches, see Am. Compl. ¶¶ 64–71, it earned investment returns from Plan assets that should have been distributed to the plaintiffs, and that the Corporation should be required to disgorge those proceeds, id. ¶ 72. Consistent with the Supreme Court's holding in Amara, the Court concludes that the relief sought by the plaintiffs here is fairly characterized as "appropriate equitable relief" under § 1303. See also Moore v. CapitalCare, Inc., 461 F.3d 1, 13 (D.C. Cir. 2006) ("An accounting for profits 'is a restitutionary remedy based upon avoiding unjust enrichment' and its purpose is to 'disgorge gains received from improper use of the plaintiff's property or entitlements.'" (emphasis added) (quoting 1 Dan B. Bobbs, Law of Remedies § 4.3(5) (2d ed. 1993))); Foltz v. U.S. News & World Report, Inc., 627 F. Supp. 1143, 1167 (D.D.C. 1986) (allowing a claim for monetary compensation for a breach of fiduciary duty

to proceed under § 1132(a)(3) because "the remedies traditionally afforded beneficiaries by the common law of trusts include the recoupment from a breaching fiduciary of money damages, so that the beneficiary may be made whole." (citing Restatement (Second) of Trusts §§ 199(c), 205 (1959); G. Bogert & G. Bogert, The Law of Trusts and Trustees § 862 (2d rev. ed. 1982); III A. Scott, The Law of Trusts §§ 199.3, 205 (3d ed. 1967))). Thus, even if the plaintiffs' claim for disgorgement takes the form of a monetary payment for the breach of fiduciary duty they allege against the Corporation, such a remedy is not precluded under the ERISA.

To support its assertion that the ERISA precludes the disgorgement sought by the plaintiffs, the Corporation first argues that the plaintiffs "seek the purported increase in the value of the Plan's assets after termination," Def.'s Mem. at 14, a result it claims is prohibited by § 1344(c), which states that "[a]ny increase or decrease in the value of the assets of a single-employer plan occurring after the date on which the plan is terminated shall be credited to, or suffered by, the [C]orporation." Construing the allegations in the Amended Complaint in the light most favorable to the non-moving party, Cafesjian, 597 F. Supp. 2d at 133–34, the Court notes that the plaintiffs' fiduciary breach claim does nothing of the sort. Rather, Claim One seeks to recoup the alleged ill-gotten investment returns on Plan benefits that the plaintiffs claim should have been distributed to them, Am. Compl. ¶ 72, not, as the Corporation characterizes the claim, to divert from the Corporation any gains (or losses) from assets properly held in the Plan. The Court therefore rejects the Corporation's first argument.

The Corporation also argues that "the Sixth Circuit specifically rejected a claim for disgorgement of profits in a case where the plaintiff sought to recover ERISA plan benefits." Def.'s Mem. at 15 (citing Rochow v. Life Ins. Co. of N. Am., 780 F.3d 364 (6th Cir. 2015)). Even if the Rochow case were binding precedent on this Court, the Corporation's reliance on it

would be unavailing. The issue before the Rochow court was whether an equitable recovery under § 1132(a)(3) was impermissibly duplicative of the plaintiff's recovery of unpaid benefits under § 1132(a)(1)(B). That opinion said nothing about the question of whether disgorgement is "appropriate equitable relief," and the Corporation's reliance on Rochow therefore misses the mark. Having already concluded that the plaintiffs' request for an equitable remedy in the form of disgorgement qualifies as "appropriate equitable relief" under § 1303(f), the Court rejects the Corporation's assertions that Claim One must be dismissed on this ground.

**3. Whether the Plaintiffs May Recover Individually for the Alleged Fiduciary Breach**

Related to the question of whether the type of relief (disgorgement) sought by the plaintiffs constitutes "appropriate equitable relief" is the question of whether any remedy may inure to the plaintiffs individually as opposed to the Plan at large. The Corporation asserts that any recovery inuring to the plaintiffs individually, as opposed to recoveries going to the Plan at large, is impermissible relief under the ERISA. See Def.'s Mem. at 11–14. In support of this argument, the Corporation relies on 29 U.S.C. § 1342, which states that the Corporation's fiduciary obligations are governed by Title I of the ERISA, except where inconsistent with Title IV, see 29 U.S.C. § 1342(d)(3), and the Supreme Court's holding in Russell, which held that any recoveries under Title I's fiduciary duty provision, § 1109, inure only to the plan as a whole. Def.'s Mem. at 14.

Beginning, as the Court must, with the statutory language, Harris Trust, 530 U.S. at 254, the Court observes at the outset that nothing in § 1303(f) suggests that the appropriate equitable relief allowed by that provision must inure only to the plan as a whole. It states, in relevant part that, "any person who is a . . . participant or beneficiary, and is adversely affected by any action of the corporation with respect to a plan in which such person has an interest, . . . may bring an

action against the [C]orporation for appropriate equitable relief in the appropriate court." 29 U.S.C. § 1303(f)(1). The Court discerns nothing in this language suggesting that any equitable relief awarded by a Court should not inure to the person "with an interest in the plan," id., who is authorized to bring suit against the Corporation, and the Corporation has cited no authority that supports its proposition. The Court also observes that the language of § 1109 and § 1303(f)(1) are hardly identical, compare § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan . . . and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." (emphases added)) with § 1303(f)(1) (quoted above), rendering arguments arising from an analysis of remedies available under § 1109 less persuasive.

Further, the cases upon which the Corporation relies, see Def.'s Mem. at 12, do little to support its position, because none of them address the equitable remedies made available under § 1303(f), see Varity Corp., 516 U.S. at 515 (plaintiffs "could not proceed under [§ 1132(a)(2)] because that provision, tied to [§ 1109], does not provide a remedy for individual beneficiaries"); Russell, 473 U.S. at 141–48 (concluding that § 1109 provides only plan-wide relief); Murchison v. Murchison, 180 F. App'x 163, 265 (D.C. Cir. 2006) (remanding fiduciary breach claims against individual defendant pursuant to § 1109 to district court for the entry of an order requiring the fiduciary to distribute misappropriated funds to the plan); Repass v. AT&T Pension Benefit Plan, No. 3:14-CV-2686-L, 2015 WL 5021405, at *4 n.2 (N.D. Tex. Aug. 25, 2015) (noting that the plaintiff could not bring a fiduciary breach claim against the defendant pension benefit plan under § 1132(a)(2) because that provision provides only plan-wide relief); Wallace

v. Blue Cross & Blue Shield of Ala., No. 14-0119-CG-C, 2014 WL 5335823, at *4 (S.D. Ala. Oct. 20, 2014) (dismissing plaintiffs' fiduciary breach claims against health insurance company because the plaintiffs impermissibly sought individual relief under § 1132(a)(2)); Zalduondo, 845 F. Supp. 2d at 154 (dismissing plaintiff's claim against health insurance company because the plaintiff sought individual relief under § 1132(a)(2)); Harris v. Koenig, 602 F. Supp. 2d 39, 50 (D.D.C. 2009) (holding that the plaintiffs' breach of fiduciary claims against individual defendants properly sought plan-wide relief under § 1132(a)(2)).

As the plaintiffs note, the Supreme Court recognized in Varity Corp., albeit in analyzing whether equitable relief was available to the plaintiffs for alleged fiduciary breaches under 29 U.S.C. § 1132(a)(3), that § 1109 is not the only provision in the ERISA that provides a remedy for fiduciary breach. Pls.' Opp'n at 24; see Varity Corp., 516 U.S. at 511–12 ("[W]hy should one believe that Congress intended the specific remedies in § [1109] as a limitation? . . . . To the contrary, one can read § [1109] as reflecting a special congressional concern about plan asset management without also finding that Congress intended that section to contain the exclusive set of remedies for every kind of fiduciary breach. After all, ERISA makes clear that a fiduciary has obligations other than, and in addition to, managing plan assets. . . . Why should we not conclude that Congress has provided yet other remedies for yet other breaches of other sorts of fiduciary obligation in another 'catchall' remedial section?"). The Court agrees that the Corporation's reliance on Russell, which limited the § 1109 remedies to plan-wide relief, is misplaced. Absent authority indicating that § 1303(f) does not provide an avenue for individual relief as an equitable remedy, the Court rejects the Corporation's arguments that the Amended Complaint fails to state a claim upon which relief may be granted on this ground.

**4. The Corporation's Remaining Arguments**

The Corporation's remaining arguments can be addressed with limited discussion. First, it asserts that the plaintiffs' breach of fiduciary duty claim fails because the plaintiffs can recover no more than their statutory benefits, Defs.' Mem. at 15–17, relying primarily on Bechtel v. Pension Benefit Guaranty Corp., 781 F.2d 906 (D.C. Cir. 1986), and Dumas v. Pension Benefit Guaranty Corp., 253 F. App'x 602 (7th Cir. 2007), as support for this argument. In Bechtel, this Circuit affirmed the district's court's ruling that the Corporation had properly determined that it had previously allowed the distribution of plan benefits above the maximum benefit level guaranteed pursuant to 29 U.S.C. § 1322 and could thereafter recapture these overpayments by downwardly adjusting the level of future payments. 781 F.2d at 906. And in Dumas, the Seventh Circuit rejected the plaintiffs' claim that the Corporation had promised, by way of representations on an informational brochure, that they would be entitled to over $3000 in monthly pension benefits, not the roughly $400 monthly payments they had been receiving, which the Corporation had determined was all the plaintiffs were entitled to receive, based on their prior contributions into the pension plan. 253 F. App'x at 604. The plaintiffs argue that these cases are inapposite because neither involves a claim for breach of fiduciary duty, Pls.' Opp'n at 30, and the Court agrees. The Court finds no support in Bechtel or Dumas, which address what statutory benefits the Corporation is permitted to distribute under the ERISA, for the Corporation's argument that the plaintiffs' are barred from pursuing a claim of fiduciary breach.

The Corporation also argues that Claim One is implausible on its face because it alleges that the Corporation's breach of fiduciary duty was intended to inflate its own coffers, a motivation the Corporation asserts is impossible given the Corporation's structure and purpose.

See Def.'s Mem. at 23–24. The plaintiffs challenge this argument through several additional factual assertions in their opposing brief regarding the Corporation's funding and operations. See Pls.' Opp'n at 37–39. But all that is required by Rule 12(b)(6) is that the allegations in the Amended Complaint, which the Court must treat as true, Cafesjian, 597 F. Supp. 2d at 133–34, state a plausible claim for relief, Twombly, 550 U.S. at 570. The Corporation acts as a fiduciary in its role as statutory trustee of a terminated ERISA plan. See 29 U.S.C. § 1342(d)(3) ("Except to the extent inconsistent with the provisions of this chapter, or as may be otherwise ordered by the court, a trustee appointed under this section . . . shall be, with respect to a plan, a fiduciary within the meaning of [29 U.S.C. § 1002(21)] . . . ."). And the "ERISA requires a trust fund fiduciary to act 'solely in the interest' of a plan's participants and beneficiaries . . . ." Fink v. Nat'l Sav. & Trust Co., 772 F.2d 951, 955 (D.C. Cir. 1985) (quoting 29 U.S.C. § 1104(a)(1)(B)). Claim One alleges that the Corporation, in its capacity as trustee, engaged in various conduct, see generally Am. Compl. ¶¶ 63–71, that resulted in the Corporation "earn[ing] massive investment returns off of assets that should have been timely allocated" to the plaintiffs, id. ¶ 72. At this early stage in the case, the Court deems these allegations sufficient to state a plausible claim of fiduciary breach against the Corporation as trustee of the Plan. The Court will therefore allow the plaintiffs to proceed with Claim One of the Amended Complaint.

**B. The Plaintiffs' Demand for Attorney's Fees**

As the plaintiffs concede, their demand for attorney's fees must fail. See Am. Compl. at 126; Pls.' Opp'n at 1 n.1 ("Plaintiffs do not dispute that Stephens precludes an award of attorney's fees in this action . . . ."). It is settled law in this Circuit that the ERISA does not authorize the recovery of attorney's fees in an action against the Corporation under 29 U.S.C.

§ 1303(f). Stephens v. U.S. Airways Grp., Inc., 644 F.3d 437, 442 (D.C. Cir. 2011).[5] Further, because the plaintiffs failed to respond to the Corporation's arguments with respect to the availability of attorney's fees under the Equal Access to Justice Act, 5 U.S.C. § 502(a)(2) (2012), see generally Pls.' Opp'n, the Court shall deem the argument conceded by the plaintiffs, Hopkins v. Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), aff'd, 98 F. App'x 8 (D.C. Cir. 2004). The Court therefore grants the Corporation's motion to strike the plaintiffs' demand for attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, the Corporation's motion to dismiss Claim One of the Amended Complaint will be denied. However, the Corporation's motion to strike the plaintiffs' demand for attorney's fees and for a jury trial will be granted.[6]

**SO ORDERED** this 6th day of July, 2016.

REGGIE B. WALTON
United States District Judge

[5] This concession notwithstanding, the plaintiffs indicate that they wish to preserve the question of whether an attorney's fees demand under 29 U.S.C. § 1303(f)(3) may be permitted for potential en banc review by the Circuit. Pls.' Opp'n at 1 n.1.

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| K. WENDELL LEWIS, et al., Plaintiffs, v. PENSION BENEFIT GUARANTY CORPORATION, Defendant. | Civil Action No. 15-1328 (RBW) |

**ORDER**

The plaintiffs in this civil action, who are pensioners and former Delta Airline pilots, allege that the defendant, the Pension Benefit Guaranty Corporation (the "Corporation"), breached its fiduciary obligations owed to them as trustee under the Employment Retirement Income Security Act ("ERISA"), improperly calculated benefits allegedly due to the plaintiffs under the ERISA, and violated the Administrative Procedure Act ("APA") during the course of determining the plaintiffs' pension benefits. First Amended Complaint ("Am. Compl.") ¶¶ 1–13, 63–156. The Court previously denied the Corporation's partial motion to dismiss the plaintiffs' breach of fiduciary duty claim pursuant to Federal Rule of Civil Procedure 12(b)(6), see Lewis v. Pension Benefit Guar. Corp., ___ F. Supp. 3d ___, ___, 2016 WL 3676099, at *9 (D.D.C. July 6, 2016), which is Claim One of the First Amended Complaint, Am. Compl. ¶¶ 63–72. The Corporation now asks this Court to reconsider its denial of the motion to dismiss, or in the alternative, to certify for immediate appellate review under 28 U.S.C. § 1292(b) the issue of whether the ERISA precludes the plaintiffs from pursuing their fiduciary breach claim in conjunction with their other pending claims, during which the Corporation requests that the

proceedings before this Court be stayed. See generally Motion for Reconsideration, or in the Alternative, for Certification to File Interlocutory Appeal, and for a Stay of Proceedings ("Def.'s Mot."). Upon careful consideration of the parties' submissions, the Court will deny the Corporation's motion for reconsideration, grant the Corporation's motion for certification, and grant in part and deny in part the Corporation's request for a stay.[1]

## I. BACKGROUND

The plaintiffs' allegations are set forth in the Court's July 6, 2016 Memorandum Opinion. See Lewis, ___ F. Supp. 3d at ___, 2016 WL 3676099, at *1–3. In its motion to dismiss, the Corporation raised five arguments: (1) that the plaintiffs cannot recover individually on their fiduciary breach claim, see Def.'s Dismissal Mem. at 11–14; (2) that the relief sought by the plaintiffs, namely disgorgement, is precluded by 29 U.S.C. § 1344(c), see id. at 14–15; (3) that the breach of fiduciary duty claim impermissibly seeks more than the statutory benefits the plaintiffs are potentially entitled to receive, see id. at 15–17; (4) that the fiduciary breach claim is impermissibly duplicative of the plaintiffs' other claims for statutory benefits in Claims Two through Six of the First Amended Complaint, see id. at 18–22; and (5) that the fiduciary breach claim lacks plausibility because the Corporation, as a federal agency, cannot have acted with the intent to enlarge its own coffers as the plaintiffs allege, see id. at 23–24. After considering all of the Corporation's arguments, the Court concluded that the fiduciary breach claim is not

---

[1] In addition to the documents already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiffs' Opposition to Defendant's Motion for Reconsideration, or in the Alternative, for Certification to File Interlocutory Appeal, and for a Stay of Proceedings ("Pls.' Opp'n"); (2) the [Pension Benefit Guaranty Corporation's] Reply in Support of Its Motion for Reconsideration, or in the Alternative, for Certification to File Interlocutory Appeal, and for a Stay of Proceedings ("Def.'s Reply"); (3) the Pension Benefit Guaranty Corporation's Memorandum in Support of Its Motion To Dismiss and To Strike ("Def.'s Dismissal Mem."); (4) the Plaintiffs' Opposition to Defendant's Motion To Dismiss and Strike ("Pls.' Dismissal Opp'n"); (5) the Pension Benefit Guaranty Corporation's Reply in Support of Its Motion To Dismiss and To Strike ("Def.'s Dismissal Reply"); (6) the Plaintiffs' Notice of Supplemental Authority Regarding Defendant's Motion To Dismiss Claim One ("Pls.' Dismissal Notice"); and (7) the PBGC's Response to Plaintiffs' Notice of Supplemental Authority Regarding Defendant's Motion To Dismiss Claim One ("Def.'s Response to Pls.' Dismissal Notice").

impermissibly duplicative, see Lewis, ___ F. Supp. 3d at ___, 2016 WL 3676099, at *4–6, that the relevant civil enforcement provision in the ERISA does not bar the relief sought by the plaintiffs, see id. at *6–9, and that the allegations in the First Amended Complaint are sufficient to state a claim for fiduciary breach, see id. at *9. Following the Court's denial of the Corporation's motion to dismiss, the Corporation timely filed the motion now before the Court.

## II. STANDARDS OF REVIEW

### A. Motions for Reconsideration Under Rule 54(b)

Under Rule 54(b), a motion for reconsideration may be granted "as justice requires," Cobell v. Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005), and the Court has "broad discretion" in deciding whether to grant such relief, id. "[M]otions for reconsideration are vehicles for neither reasserting arguments previously raised and rejected by the court nor presenting arguments that should have been raised previously with the court." Said v. Nat'l R.R. Passenger Corp., ___ F. Supp. 3d ___, ___, 2016 WL 3211809, at *1 (D.D.C. June 9, 2016) (Walton, J.). Instead, courts deciding whether to reconsider interlocutory orders under Rule 54(b) assess whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." Lewis v. District of Columbia, 736 F. Supp. 2d 98, 102 (D.D.C. 2010) (quoting Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." United States ex rel. Westrick v. Second Chance Body Armor, Inc., 893 F. Supp. 2d 258, 268 (D.D.C. 2012).

**B. Certification of Interlocutory Appeals Under 28 U.S.C. § 1292(b)**

A district court may in its discretion certify an order for interlocutory appeal when: (1) the order involves a controlling question of law, (2) as to which a substantial ground for difference of opinion concerning the ruling exists, and (3) an immediate appeal would materially advance the disposition of the litigation. 28 U.S.C. § 1292(b); see also APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d 90, 95 (D.D.C. 2003) (citing Walsh v. Ford Motor Co., 807 F.2d 1000, 1002 n.2 (D.C. Cir. 1986)) (additional citation omitted). The party seeking interlocutory review has the burden of establishing all three elements to merit "departure from the basic policy of postponing appellate review until after the entry of a final judgment." APCC Services, 297 F. Supp. 2d at 95.

## III. ANALYSIS

**A. The Defendant's Request for Reconsideration**

The Corporation contends that the Court's memorandum opinion denying dismissal of the breach of fiduciary duty claim contains four errors of law: (1) that individuals can bring fiduciary breach claims against the Corporation that duplicate claims for benefits, Def.'s Mot. at 5–7; (2) that plan participants can recover more from the Corporation than their benefits under Title IV of the ERISA, id. at 7–9; (3) that individual, as opposed to plan-wide, relief is available to the plaintiffs under Title IV, id. at 9; and (4) that 29 U.S.C. § 1344(c), which states that any increase or decrease in the value of plan assets after the plan's termination accrue to the Corporation, is limited to assets "properly held" in the plan, id. at 10. In response to the plaintiffs' assertion that these arguments are merely repackaged versions of the Corporation's original contentions, Pls.' Opp'n at 5, the Corporation states that these four arguments are made

in response to what it contends is the Court's "novel and expansive interpretation of Title IV," Def.'s Reply at 1.

In the Court's view, the Corporation's first three challenges merely reiterate arguments made in support of its motion to dismiss. See Def.'s Dismissal Mot. at 11–22 (arguing that the plaintiffs cannot recover individually for their fiduciary breach claim; that the breach of fiduciary duty claim impermissibly seeks more than the statutory benefits to which the plaintiffs are potentially entitled; and that the fiduciary breach claim is impermissibly duplicative of the plaintiffs' other claims for statutory benefits in Claims Two through Six of the First Amended Complaint). These contentions advance only the Corporation's original grounds for dismissal of the plaintiffs' fiduciary breach claim, not grounds for the Court's reconsideration of its decision not to dismiss the claim. See Shea v. Clinton, 850 F. Supp. 2d 153, 158 (D.D.C. 2012) ("Parties should not use motions for reconsideration to attempt to relitigate matters already settled.")

However, the Corporation's fourth ground for reconsideration merits some discussion. Rejecting the argument that the disgorgement sought by the plaintiffs was prohibited by § 1344(c), the Court stated the following:

> [T]he Corporation first argues that the plaintiffs' 'seek the purported increase in the value of the Plan's assets after termination, Def.'s [Dismissal] Mem. at 14, a result it claims is prohibited by § 1344(c), which states that '[a]ny increase or decrease in the value of the assets of a single-employer plan occurring after the date on which the plan is terminated shall be credited to, or suffered by, the [C]orporation.' Construing the allegations in the Amended Complaint in the light most favorable to the non-moving party, . . . the Court notes that the plaintiffs' fiduciary breach claim does nothing of the sort. Rather, Claim One seeks to recoup the alleged ill-gotten investment returns on Plan benefits that the plaintiffs claim should have been distributed to them, Am. Compl. ¶ 72, not, as the Corporation characterizes the claim, to divert from the Corporation any gains (or losses) from assets properly held in the Plan. The Court therefore rejects the Corporation's first argument.

Lewis, ___ F. Supp. 3d at ___, 2016 WL 3676099, at *7. Seizing upon the Court's "properly held" language in the opinion, the Corporation argues that § 1344 "expressly prohibit[s] claims

by anyone to investment gains and losses" and that there is "no exception" to this prohibition. Def.'s Mem. at 10. The Corporation further argues that "[t]he Court's implication of such an exception undermines the express statutory language and the policy choice Congress made." Id. But as the Corporation acknowledges by using the terms "surmise" and "implication" to describe the Court's language quoted above, and contrary to the Corporation's contention in its reply brief, see Def.'s Reply at 2, the "properly held" language in the Court's opinion is far from a "holding" or legal conclusion regarding the scope of § 1344(c); instead, the Court merely stated that the plaintiffs' fiduciary breach claim seeks disgorgement as a remedy for the Corporation's alleged unjust enrichment based on funds that would otherwise have been remitted to the plaintiffs and not retained in the Plan had the Corporation not committed the alleged fiduciary breaches, see Am. Compl. ¶ 72, a theory of relief the Court permitted to proceed beyond the motion to dismiss phase of this case, Lewis, ___ F. Supp. 3d at ___, 2016 WL 3676099, at *7. For these reasons, the Court, in its discretion, declines to reconsider its decision not to dismiss the plaintiffs' fiduciary breach claims.

**B. The Defendant's Request for Certification**

Although the Court declines to reconsider its decision not to dismiss the plaintiffs' breach of fiduciary duty claim, the Court does agree with the Corporation's alternative argument that this issue presents a circumstance in which interlocutory appeal is appropriate. As the Corporation recognizes, this Court's opinion appears to be the first to permit a claim for breach of fiduciary duty against the Corporation to proceed in conjunction with the plaintiffs' petition for judicial review of the Corporation's allocation and benefit determinations. Def.'s Reply at 4 (stating that this case presents issues "of first impression"). The Court is persuaded that the dearth of controlling precedent that supports the Court's determination regarding the fiduciary

breach claim, coupled with the Corporation's credible contention that the ERISA does not permit the plaintiffs to pursue this claim, raise a controlling question of law as to which a substantial ground for difference of opinion exists. See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp., 233 F. Supp. 2d 16, 19 (D.D.C. 2002) ("[A] controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources.") (quoting In re Vitamins Antitrust Litig., No. 99-197, 2000 WL 673936, at *2 (D.D.C. Jan. 27, 2000))); APCC Services, 297 F. Supp. 2d at 97 ("A substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits."). And while the Court regrets that an appeal of this issue may further delay the global resolution of these proceedings, the Court believes that an immediate appeal could spare the parties the expense of potentially protracted discovery involving the claims of over 1700 elderly plaintiffs, see APCC Services, 297 F. Supp. 2d at 100 ("An immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed."), who, even if they succeed on the merits, could not recover what would almost certainly be substantial attorney's fees associated with such discovery, see Stephens v. U.S. Airways Grp., Inc., 644 F.3d 437, 442 (D.C. Cir. 2011) ("[T]he [ERISA] does not authorize attorney's fees for actions against the [Corporation].").

Notwithstanding the Court's decision to certify an interlocutory appeal regarding the plaintiffs' breach of fiduciary duty claim, the Court declines to stay the proceedings before it pending resolution of the appeal. 28 U.S.C. § 1292(b) states that an "application for an [interlocutory] appeal . . . shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." As the Corporation notes, the

remainder of the plaintiffs' case can proceed under the usual procedure for review of agency action under the APA in this District, Def.'s Reply at 7, i.e., by the filing of the administrative record and motions for summary judgment. Seeing no reason to further delay the Court's review of the merits of the plaintiffs' other claims, the Court will require the parties to file a joint proposed briefing schedule pursuant to Local Rule 16 to ensure that this dispute progresses to a timely resolution.

## IV. CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part the Corporation's motion. Accordingly, it is hereby

**ORDERED** that the Corporation's motion for reconsideration is **DENIED**. It is further

**ORDERED** that the Corporation's motion for certification to file an immediate appeal of the Court's order denying dismissal of the plaintiffs' breach of fiduciary duty claim is **GRANTED**.[2] It is further

**ORDERED** that the Corporation's request for a stay of the proceedings before this Court pending the resolution of the appeal is **GRANTED IN PART AND DENIED IN PART**. The request is **GRANTED** with respect to the breach of fiduciary duty claim, and **DENIED** with respect to the plaintiffs' other claims. It is further

**ORDERED** that, on or before February 6, 2017, the parties shall file a joint proposed schedule for the filing of the administrative record in this case and the briefing of dispositive motions regarding the remaining claims in the First Amended Complaint.

**SO ORDERED** this 23rd day of January, 2017.

REGGIE B. WALTON
United States District Judge

[2] A separate certification order shall be issued contemporaneously with the issuance of this Order.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| K. WENDELL LEWIS, et al., Plaintiffs, | ) | |
| v. | ) | Civil Action No. 15-1328 (RBW) |
| PENSION BENEFIT GUARANTY CORPORATION, Defendant. | ) | |

**ORDER CERTIFYING INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)**

Upon motion of the defendant, Pension Benefit Guaranty Corporation (the "Corporation"), the Court certifies that the Memorandum Opinion and Order issued July 6, 2016, in this case involves the following controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate interlocutory appeal from that Order may materially advance the ultimate termination of the litigation:

1. Whether individuals can bring a fiduciary breach claim against the Corporation pursuant to 29 U.S.C. § 1303(f) in addition to claims for judicial review of the Corporation's benefit determinations;
2. Whether plan participants in such a lawsuit can recover more than the amount of their statutorily-defined benefits under Title IV of the Employment Retirement Income Security Act;
3. Whether plaintiffs in such a lawsuit may recover individual, as opposed to plan-wide, relief for the alleged fiduciary breach; and

4. Whether 29 U.S.C. § 1344 precludes the remedy of disgorgement of investment gains derived as a result of the alleged fiduciary breach.

**SO ORDERED** this 23rd day of January, 2017.

REGGIE B. WALTON
United States District Judge

**LIST OF PLAINTIFFS IN FIRST AMENDED COMPLAINT, AS MODIFIED BY PLAINTIFFS' SUBSTITUTION (ORDER DATED OCTOBER 13, 2016, DOC. 60)**

K. Wendell Lewis
Darrell L. Abby
Jack L. Abernathy, Jr.
Charles F. Acker
Frank A. Acquavella
Robert E. Adam
Erich H. Adams
Randall R. Adams
Robert A. Adams
Walter A. Adams
James T. Addington
Paul R. Adlington
James D. Agnew
Frank L. Ahern
Steven A. Aigner
Martin D. Albang
Kurt Albrecht
John P. Alderman
Donald J. Allen
James R. Allen
Robert R. Allen, Jr.
Robert T. Allen
Ronald E. Allen
Ronald J. Allen
Richard E. Alvarez
Estate of Nicholas L. Amabile
Donald L. Ames
Alan J. Anderson
Andrew J. Anderson
Clyde A. Anderson
J. Eric Anderson
John C. Anderson
John M. Anderson
Peter D. Anderson
Harry W. Andrews
Francis C. Anglin
Louis P. Anich
Gregg B. Archer
John T. Argo, Jr.
James Lee Armstrong
Roger F. Arndt
James F. Arnold, II
William E. Arnold

Donald E. Asay
David P. Ascher
Vernon G. Ash
David B. Ashworth
Robert D. Askins
Lawrence F. Aucin
Bernard J. Auer
David S. Austin
Thomas W. Avant
Gregg H. Averett
James Averett
James R. Aversman
William U. Avirett
Jim L. Avramovich
Myron J. Babler
Leroy R. Bachman
L. M. Baggett
David W. Bailey
James G. Baird, Jr.
Carson V. Baker
Larry W. Baker
Marvin C. Baker
Samuel Winn Baker
Arthur W. Bales, III
John D. Ball
Harry G. Ballance, Jr.
Gregory W. Barber
Raymond E. Barber
Thomas Roy Barefoot
George D. Barlow, Jr.
Douglas E. Baron
George J. Barr
Benjamin B. Barrett
Paul H. Barrett, Jr.
Chelsea LeVone Bartenfeld
Jerry N. Bartlett
Jon H. Barton
Estate of Leslie E. Bates c/o Gene Bates
Gerald H. Bauer
Russell Carl Bauer
Frederick J. Beardsley
James W. Beaubien, III
Bruce M. Beavers
Richard A. Beck
Thomas V. Beck
George L. Becker

Robert W. Beckman
William P. Beede
Earl H. Behrens
Raymond L. Bell
Louis A. Belline
Timothy W. Bellury
Robert B. Benham
Sterling N. Bennett
Charles A. Benson
Tommy Ray Bentley
Roy B. Bentson
George E. Berg
Dean H. Berk
Steven D. Berman
Damon R. Berry
Ronald J. Berry
Douglas E. Best
Charles E. Bethel
James R. Bettcher
Leo D. Bezdek
Charles L. Bible
George L. Biles, Jr.
Joseph P. Bilotta
Albert C. Biniasz
Jack L. Birchall
John Heflin Birge
Michael W. Birmingham
Joseph H. F. Bissell
Christopher S. Black
Reuben Black
Johnny H. Blackmon
Byron R. Blackwell
Steven L. Blackwood
Robert A. Blanton
Michael S. Blaskovich
Claudia A. Blaz for the Estate of Delbert Schwab
Jack G. Blaz
Robert J. Bloink
Roy E. Blomgren
Wade D. Bloom
George E. Blosser
David E. Blubaugh
Robert H. Bluhm
Ralph N. Boatwright
Michael J. Bober
William R. Bodine, Jr.

John A. Bodmer
James J. Bodnar
Kenneth J. Bogle
Michael R. Bolier
Duane A. Bolin
Ronald O. Boltz
James S. Bomar
William Philip Bommer
Robert F. Bonaccorso
Ross F. Bonny, Jr.
Frederick O. Boone, Jr.
Lloyd D. Boone
Frederick C. Borchert
Bruce Borland
Leland R. Bos
Douglas M. Boston
Frank M. Bottoms, Sr.
Barry C. Boustead
Michael M. Bowen
Connie J. Bowlin
Estate of Edward Bowlin c/o Connie Bowlin
Allen W. Boyce
Jan K. Boyd
John E. Boyd
Dan L. Boyd, Jr.
William E. Boyle
Donald O. Bradford
Richard J. Bradley
Bryce L. Bramsen
Robert A. Brandon
William C. Brant
James Carroll Brasher
Oscar D. Braswell
Ralph M. Braswell, III
Charles M. Bratton
Charles B. Bray, III
James A. Brekke
Thomas A. Brennison
W. Charles Bridges
Daniel W. Bridges, Jr.
William F. Brindell
William E. Brintnall
Larry W. Bristow
Harold S. Brito
Penny L. Brock for the Estate of William Brock
Charles Brockway

Ralph S. Broderick
William Bronson
Jimmie L. Brooks
William Charles Brooks
Stephen P. Bross
Estate of Andrew P. Brown c/o Charlotte Brown
Charles E. Brown
David A. Brown
Fred M. Brown
Estate of Kurt H. Brown
c/o Else Brown
Mark J. Brown
Melvin Brown
Michael W. Brown
Randall H. Brown
Robert Craig Brown
Robert G. Brown
Robert K. Brubaker
David W. Bruce
Leonard C. Brunasso
Ronald G. Brundridge
Estate of Robert W. Brushwyler c/o RuthAnn Brushwyler
Robert M. Bryant, Sr.
William G. Bucklin
Estate of Henry T. Buczek c/o Diane M. Buczek
Thomas C. Budd
William C. Buergey
Carl R. Buettner
Andrew L. Bukaty
John F. Bulger
Charles R. Bumgarner
Myrl W. Bundrick
William R. Buntin
Clarence M. Burch
James Lee Burge
Jerald C. Burgess
Larry J. Burgy
Edward Devin Burke
Patrick J. Burke, Jr.
W. D. Burkhardt
Ferree R. Burkhead
Gerald R. Burnett
Raymond C. Burnett
Charles D. Burnfield
John F. Burns
Robert D. Burns

Robert M. Burns
Dennis E. Burton
Geren E. Burton
Donald J. Bushey
Ronald V. Butler
Samuel B. Butler, III
Thomas P. Butt
Thomas E. Byde
Raymond S. Bye
James B. Byrd
Lester M. Byrd
John Charles Byrne
Phillip J. Byrnes
James V. Cagle
Michael J. Cahill
Albert W. Caiazza
John B. Cain
John Caldwell
Clarence W. Callahan, Jr.
Dana A. Callanan
William E. Callaway
Thomas J. Calvanelli
Donald L. Camp
Benjamin M. Camp, Jr.
Alan D. Campbell
Arthur L. Campbell
Robert K. Campbell
Therman L. Campbell
Buddy W. Candelario
David J. Cann
Charles Milner Cannon
Partick A. Cardinale
Charles A. Carlon
Timothy L. Carman
Robert L. Carmical, Jr.
Walter C. Carmichael
Craig W. Carpenter
James D. Carpenter
Jack E. Carr
Henry G. Carrington
Robert A. Carson
James L. Carter
John R. Carter
Timothy J. Carter
Francis T. Caruso
Laurence L. Casada

Lawrence Casale
Robert J. Caster
Estate of Clayton N. Castle c/o Karen L. Castle
John P. Catchings
Frederic N. Catoni
John S. Caughman, III
Malcolm D. Cauldwell
Olin H. Causey
Michael B. Cavanagh
Marty J. Cavato
Edward Nelson Caylor
John Paul Cerak
Charles David Ceraso
Richard C. Chabot
Mark S. Chaffin
Edward L. Chambless
David A. Champa
Thomas A. Champley
Charles E. Chauvin
Robert Tracy Cheatham, III
Ely Chen
Kenneth G. Chirhart
Noble C. Christensen
Estate of Jerry A. Church c/o Linda Stone
James J. Cianci, Jr.
Robert Cinibulk, Jr.
Eric L. Cintron
Dion F. Clancy
Bryan R. Clark
David J. Clark
Forrest C. Clark
George B. Clark
Richard L. Clark
Christian M. Clausen
Stuart M. Clay
Estate of Craig D. Cleveland
c/o Janice Cleveland
Alan Richard Click
Estate of David W. Clifford c/o Jean Clifford
Timothy C. Clifford
Glenn D. Cloes
Spencer W. Closson
Luke E. Closson, Jr.
James Dwight Cloudt
Maurice Cloutier
James C. Cochran

Mac H. Cochran
Edward E. Cody
Richard E. Coe
John E. Coffin
James S. Colby
Richard E. Colby
Clifford I. Cole, Jr.
William D. Colegrove
Craig S. Coleman
George S. Coley
Estate of Donald B. Collins, Sr. c/o Billie Collins
Glen H. Collins
Eric M. Coloney
Phil E. Colston
James D. Compton
Raymond D. Compton
Michael J. Conaboy
Edwin L. Conrad
Dale M. Content
Darwin F. Cook
John E. Cooley
Ronald T. Cooper
Estate of William A. Cooper c/o Diane Cooper
John B. Cooper, Jr.
David J. Copeland
Henry N. Coppola
Robert D. Corder
Denise B. Cordero
Pat A. Costa
John N. H. Costas
Bobby W. Costilow
Estate of Joseph A. Coughlin c/o Elizabeth Robertson Coughlin
Estate of Daniel H. Courtney
Harold W. Cousar
Michael L. Cox
Michael C. Crabtree
Estate of Robert D. Craft c/o Alycia A. Craft
James R. Craig
Richard P. Craine
Stephen M. Crawford
Stephen R. Crawford
Dohrman G. Crawford, Jr.
Ronald E. Crispe
Thomas Croasdale
Kenton W. Crockett
John D. Crofton

Edward C. Cronin
James A. Crookston
John W. Crotty
Charles W. Crow
Richard D. Crow
Samuel W. Crow, Jr.
Robert L. Cuddeback
Bruce J. Cullen
Mark S. Cullings
David G. Culpepper
William S. Cunningham
William Tolliver Cunningham
Walter R. Curry
Gary L. Curtis
Richard L. Curtis
Clark A. Curtiss
Terry L. Cusick
John MacKay Daley
Fred J. Dambrie
Ray A. Daniel
Bruce E. Dantzler
Frank W. Daugherty
David M. Davis
Guy W. Davis
James W. Davis, Jr.
Robert W. Davis
Estate of Ronald S. Davis c/o Gloria G. Davis
Thompson Henry Davis
George Trent Davis III
Charles P. Dawson
Thomas Day
Andrew M. Deane
Rex L. Dearden
John R. Dearie
William C. DeAugustinis
Robert G. Decker
James E. Degnan
Dennis A. DeGuire
William R. DeLine
Estate of James R. DeLuca
Michael E. DeMarino
Bruce H. Dement
Bruce T. DeMoss
David D. Dempsey
Robert J. Derr
John A. Derrick

Philip L. Garver
Charles B. Gay
Jon L. Geerlings
Shelia M. Geisler for the Estate of Michael Geisler
Gerard F. Genellie, Jr.
Nicholas A. Gentile
John C. Geoghegan
James G. George
John R. Gianforte
Thomas Gibbons
George L. Gibson, Jr.
Thomas J. Gilmer
Charles P. Gilmore
Richard E. Glantz
Patrick M. Glazier
Donald R. Glittenberg
Jan M. Godsey
Frederick L. Goduti
William K. Goeken
Estate of William G. Goff, Jr. c/o Karen Z. Goff
Wallace H. Goltry
Richard A. Gooch
James J. Goode III
Robert A. Goodman
Thomas B. Goodman
Lawrence F. Goodrich, Jr.
Fred G. Gordon
Edward J. Gorman, Jr.
John C. Gottschang
Jerry C. Goulding
Dwight E. Grandia
Edward P. Graves
James H. Gray
Stephen R. Gray
Jerome F. Green
Otis J. Greene, Jr.
Charles N. Gregg
Wayne D. Gregg
Tyler R. Gresham, Jr.
Stephen T. Grice
Gerald Grieser
Robert D. Griesinger
Lloyd H. Griffin, Jr.
William A. Griffith
Lee E. Griffiths
Lawrence A. Grippo

Douglas Groff
Kenneth R. Gross
Kenneth E. Gross, Jr.
Thomas W. Grove
Ronald E. Grubb
Paul Joseph Gruebnau
Nicholas E. Grynkewich
Michael E. Gum
Stephen Marcus Gunn
Alexander M. Haase
Carol W. Hagle for the Estate of Conrad H. Hagle
Robin J. Haglund
Charles A. Hair
Robert D. Halcomb, Jr.
Ronald A. Hale, Jr.
Joseph R.Haley
Creston D. Hall
Frederick S. Hall
Jeffrey Fulton Hall
Micheal H. Hall
Robert F. Hall
Steven D. Hall
Thomas W. Hallam, II
Mark D. Halsor
Bertram L. Hambleton, III
Curtis S. Hamme
Milton E. Hammon, Jr.
Wendell Holmes Hamrick
Ernest L. Hand
David E. Hansen
Donald Larry Hansen
Gregg O. Hanson
Philip J. Hardy
Hobart M. Harmon
James S. Harper
John Edwin Harper
Malcolm L. Harper
Wayne D. Harper
Frederick B. Harris
Robert D. Harris
Richard C. Harris
Albert V. Harrison
John C. Harrison
John S. Harrover
William M. Hart
Nile L. Harter, Jr.

Christopher R. Hartle
Larry E. Harvey
Estate of Dennis W. Harvison c/o Deborah Harvison
Thomas E. Hassey
James G. Hauf
William A. Hawkins, Jr.
Estate of William M. Hay
Harvey L. Hayden
Kenneth M. Hayes
Richard R. Hayes
Jimmy R. Haynes
David R. Hazen
Eric Hearnsberger
John P. Heath
David M. Hedges
Joel R. Hedlund
William S. Heidt
Ralph E. Heimer
Peter S. Heins
Carl G. Heinz
Carl M. Hendren
Richard N. Hendrickson
Warren B. Hendrickson
Donald F. Henry, Jr.
John Dee Hensler
Burnett A. Hernes
Robert P. Herriott, Sr.
Scott C. Hersha
Gustav S. Hertz
Richard E. Herzog
Fred G. Hess
Robert K. Heuchling
Daryl L. Heusinkveld
Edward Lee Hibbard
Michael J. Hichak
Michael G. Hickey
David G. Hickox
Ernest W. Higgins
Carl R. Higginson
Peter L. Hilbig
Herbert D. Hill
Robert M. Hill
Estate of Robert A. Hillegas c/o Cathy Hillegas
Estate of Edward J. Hindle c/o Nancy Vance Hindle
Marion D. Hindman
Rodney S. Hinds

Edward A. Hines
Johnny Harrel Hines
William C. Hines
Elmer E. Hinkle, Jr.
Richard R. Hirsch
Richard D. Hissem
Robert W. Hobbs
Donald L. Hobert
Fred P. Hodge
Warren Joseph Hodges
Ross M. Hoffman
Estate of John V. Hogan, Jr.
Richard Hohlowski
Peter Holahan
Philip C. Holdiness
Jack D. Hollister
Daniel E. Holloway
Richard N. Holmes
Stephen G. Holmes
Judson W. Holmes, Jr.
Thomas D. Holt
John H. Honsinger
James J. Hoogerwerf
Richard W. Hooper
Victor J. Hooper
Harry W. Hope
Stephen V. Hopkins III
Jeffrey N. Hornfeck
Roger Thomas Horrell
Estate of Charles W. Horton III, c/o Susan Horton
James J. Hourin
William B. Houseman
Julian R. Hovey
David L. Hovrud
Robert C. Howson
Gurves R. Hudson
Paul J. Hudson
Donald A. Huffmaster
Jerry M. Hughes
Joe H. Hughes
George G. Hull
Estate of Herbert D. Hull c/o Betty Hull
Joe F. Hulsey
Tommy M. Hunter
Arnold W. Husemann
James L. Hutson

Donald F. Hyde
Michael L. Hyjek
Allen M. Ice
James J. Igoe
Curtis A. Illies
Kathleen Ilyin for the Estate of Michael Ilyin
James A. Ingham
John M. Ingram
William L. Ippolito
Delmont S. Irving
Timothy H. Jackson
Thomas J. Jacobus
Estate of Kenneth C. James,
c/o Cheryl P. James/The James
Family Revocable Trust
Robert Q. Jameson
David Henry Jenkins
Russell H. Jensen
William L. Jensen
George Jetton
Robert W. Jewett
Alan J. Johanson
Christopher W. Johnson
Clinton Bernard Johnson
Dennis A. Johnson
James Allen Johnson
James B. Johnson
Jeffrey B. Johnson
Lance J. Johnson
Robert L. Johnson
Sheldon P. Johnson
Stephen E. Johnson
Hoyt A. Jolly, III
Dennis B. Jones
Edmund R. Jones
James Austin Jones
James Lofton Jones
James R. Jones
Larry E. Jones
Estate of Leon M. Jones c/o Susan S. Jones
Richard D. Jones
Richard L. Jones
Robert H. Jones
Roger N. Jones
Ronald C. Jones
Scott R. Jones

Thomas L. Jones
William D. Jones
William Pickens Jones
Wilton R. Jones
Patric Jordan
Samuel C. Jorgensen
Stanley A. Jorgensen
William G. Jump
Estate of Peter G. Just c/o Janet Just
Raymond F. Justinic
David H. Kadetz
Gerald R. Kailing
Arthur H. Kaiser
Duane D. Kalember
Alan C. Kamback
George G. Kammerer
Thomas F. Kanaley
Robert Kane
William K. Kapp, Jr.
John C. Kapsaroff
Robert L. Karantz
John M. Karlovich
Jeffrey M. Kaseman
Douglas G. Kasemeier
Edward F. Kasold, Jr.
Doran W. Katka
William J. Kattula
Richard X. Kauffmann, Jr.
R. Ford Keating
Stephen I. Keibler
Phillip J. Kelley
Estate of William W. Kellner c/o Sandra Kellner
Billy Howard Kellum
Bernard L. Kelly
Jack S. Kelly
Michael R. Kelly
Richard E. Keltner
Barry G. Kendall
Thomas C. Kenna
John A. Kennedy
Lawrence J. Kenney
David Thorval Kerr
Herbert F. Kerr
William F. Kerschner
Robert W. Kesler
Lee H. Ketelsen

Alfred W. Kettenring, Jr.
Eugene W. Key, Jr.
Kim B. Kilgore
Thomas D. Kinder
John C. King
Mark L. King
Robert W. Kingsbury
Lee Kinnebrew, III
Fred Joel Kirijan
Alfred E. Kirk
Robert F. Klauer
Kirby J. Klein
Michael James Klindt
Randolph L. Klock
Ruth M. Klock
William F. Klumpp
Gerald A. Knapp
George H. Knehr
William Edward Knox
Charles M. Knudson
Ronald K. Kobernik
Lawrence M. Kocisko
Daniel E. Koerner, Jr.
Estate of Ronald A. Kolb c/o Gary Kolb
Attila Kontor
Daniel A. Kopack
Chad N. Koppie
Stephen M. Korcheck
Linwood C. Kornegay
Ronald L. Korthals
Lambert L. Kouba
Kenneth G. Kozimer
Arnold W. Kraby
Richard L. Kraft
Lawrence L. Kraker
David W. Kramer
George L. Krayniak
Robert E. Krone
Paul M. Kruger
Joseph J. Krygiel
Jesse V. Kukier
Frederick J. Kull
Samuel H. Kupresin
Michael B. Kutner
Estate of Phillip R. LaBerge
Chester R. Ladd, Jr.

David C. Lake
Wayne Laliberte
Ronald J. Lambe
Craig S. Lamkin
Ross L. Lammers
Timothy O. Lamons
Robert P. Lance
Douglas A. Lane
Margaret Ann Lane for the Estate of Richard G. Lane
Carl D. Langas
Rodney E. Langer
Theodore F. Langworthy
Enrique J. Lanz
Arthur L. LaPointe
Tryggve F. Larsen
Allen L. Larson
Charles D. Larson
Wayne B. LaRue, Jr.
Estate of Robert N. Lawrence, c/o Carolyn Lawrence
Robert E. Lawson
Timothy K. Layman
Joseph B. Leadingham
William Edward Leatherbee
George W. Leatherbury
Thomas LeBoutillier
Robert H. Lee
Brian Lehman
Alan L. Leineke
Alfred W. Leistikow
Dominic Lemma
Charles P. Lenard, Jr.
Peter J. Lenny
John H. Lesher, Jr.
Benjamin N. Lester
Michael B. Letkeman
Estate of Donald W. Lewis c/o Donna Lewis
Roger Allan Lewis
Paul R. Lindberg
John Irvin Linder, Jr.
Robert F. Lindley
Magness A. Lindsey
John D. Lindstrom
David L. Link
William H. Linkroum, III
Richard L. Linteris
Sidney E. Linton

Michael F. Lloyd
Alexander W. Loeber
Robert S. Lomba, Jr.
William R. Lord
Andre E. Lovas
Billy R. Loveless
William A. Lovell
Larry L. Lowe
Charles F. Lowry
Carl Lowry, Jr.
Charles L. Lucas
David N. Lucas
Herbert D. Ludwig
William Burt Lumley
Kenneth Luplow
Stephen D. Lutz
John Lawrence Lynch
James D. Lynch, Jr.
James M. Lyster
William M. Machovina
Robert J. Mackey
Donald Mackintosh, III
Ronald R. Macko
Mark B. Macomber
Edward L. Madden
Edwin F. Madigan
Raymond F. Magaro
Anthony G. Maglio
John P. Maguire
Donald F. Mairose
Dan P. Malone
Estate of James M. Mangham c/o Leslie Kay Mangham
Joseph W. Manke
John C. Manstrom
Ronald H. Mantei
Larry W. Marr
Michael B. Martella
Daryl T. Martin c/o Carol Martin, POA
Earl Jay Martin, Jr.
Hall A. Martin
Kenneth E. Martin
Richard Jan Martin
Roger Martin
Thomas S. Martin
George T. Martin, Jr.
Solomon G. Martin, Jr.

Phillip S. Marzolino
David T. Mason
David W. Mason
Manfred Mason
Nathan L. Mason
Estate of Walter M. Massey, c/o Betty Massey
Estate of John A. Mastronardi
Mark H. Matherne
Arthur B. Mathews
James R. Matthews
Kenneth R. Matthews
William T. Matthews
David L. Mattingly
Estate of Ernest R. Maxwell
Robert M. May
John S. Mayer
Louis H. McAbee
Frank M. McAfee, Jr.
Walter Gary McBride
William B. McBride
William F. McBride
Timothy A. McBrier
James H. McCann
Truman M. McCarter
Mark S. McCarthy
Richard M. McCarthy
Keith McCauley
James L. McCloskey
Jackie P. McCormick
Thomas Dale McCormick
Estate of Reginald J. McCrary
Daniel M. McCue
John Alexander McCurdy, Jr.
Daniel J. McElroy
Peter A. McElroy
Jack R. McEncroe
Robert E. McEvoy
Llewellyn P. McEwan
Steven B. McGaw, Sr.
Michael D. McGibney
Patrick McGirl
Michael P. McGrath
Stephen R. McGreevy
Gary R. McHargue
David Thatcher McHenry
James S. McIntosh

David J. McKelvey
Thomas J. McKibben
John M. McLain
Daniel B. McMahon
Jon V. McMillan
George V. McNeill
David R. McNeill, Jr.
Alan M. McPherson
Bobby G. Measles
Jim (Jimmie) H. Mecom
Thomas A. Meloy
Gene Gordon Mercer
Jack L. Meredith
David B. Merena
Thomas R. Merkley
Robert H. Merrell
Alma Brent Merrill
Wayne R. Merrill
Philip A. Messier
Michael H. Messmore
Wesley R. Metlick
James R. Mewhirter
Thomas A. Meyer
Dave A. Miller
Gary L. Miller
John E. Miller
Estate of Robert A. Miller c/o Robert Miller
Thomas J. Miller
William F. Milligan, Jr.
John L. Milliken
Michael J. Miltenberger
Robert E. Mitchell
Harold R. Mobley
George A. Moll
Timothy P. Monahan, Sr.
Glenn A. Monesmith
Joseph W. Mongold
Harry John Montague
Kenneth Montgomery
Ronald R. Montoya
Victor R. Moody
Larry A. Moore
Paul L. Moore
Robert Lowery Moore
Roger O. Moore
John D. Moran

Edward L. Morey
Gregory Charles Morgan
Howard B. Morgan
John Morgan
Robert M. Morgan
John B. Morgan, Jr.
Walter T. Morgan, Jr.
Gregory L. Morris
Jerry L. Morris
Thomas Henry Morris
Robert J. Morrison
Robert D. Moser
Paul B. Motley
Jerye Motschman
Gordon S. Moyer
Gilbert H. Moyer, Jr.
Brian Francis Mullan
Michael J. Mullaney
John T. Mullen III
Michael J. Mullin
David E. Mumme
John G. Murdoch
Hugh R. Murphy
Roger Wayne Murphy
Terance P. Murphy
H. Stetser Murphy, Jr.
Samuel J. Murray
Scott B. Murray
Kenneth D. Musser, Jr.
Steve B. Nagy
Rafik E. Nahas
Harold M. Najarian
John A. Nance, Jr.
Philip M. Nardecchia
Paul J. Natho, Jr.
Paul F. Neagle
Robert J. Neider
Darryl M. Neidlinger
James J. Nelan
Robert A. Nelson
William A. Nelson
Estate of William D. Nelson c/o David L. Nelson and Robert Nelson
Richard Nesz
Christopher F. Nevins
John S. Newbold
Kenneth A. Newkirk

Robert C. Newlin
Greg Nichols
Stephen E. Nichols
Forrest Rhea Nichols, Jr.
Robert A. Nicotri
Charles Patton Niven
Curtis R. Norred
Vernon R. Norris
Steve W. Nowicki
James H. Nutt
David Francis OBrien
Robert M. O'Brien
Kevin J. O'Connor
Clinton M. Odom
Estate of Lawrence D. Olbright
Darrell V. Olson
Gerald R. Olson
Robert J. Oneal
Kenneth J. O'Neill
Michael G. Opbroek
Edwin L. O'Rourke
Ralph R. Orrie
James W. Ortman
Estate of Charles W. Osborn c/o Connie Osborn
Raymond E. Otten
Dennis E. Owens
John D. Owens, Sr.
Charles M. Ozment
Martin Pace
Anthony F. Paciolla
Douglas Morgan Padgett
Daniel C. Palmer
Donald A. Palmer
Stetson G. Palmer
James J. Pancharian
William A. Pankey, III
Alvin F. Pannell
William J. Pantesco
Anthony R. Papandrea
Richard P. Papera
Harry C. Papineau
Elbie A. Parham
Robert A. Parham
David Anthony Parker, Sr.
James Philip Parker
Thomas P. Parkinson

Kenneth M. Parr
Estate of John E. Parsons c/o Duska Parsons
Robert M. Parsons. Jr.
Estate of James Byron Pascal
James Randolph Pate
Estate of Tommy V. Patton c/o Sandra A. Patton
Frederick B. Payne
James M. Payne
Jeffrey C. Payne
Samuel Thomas Peace, III
Kay Braxton Pearce
Marc E. Pearce
Marce M. Pearson
John Albert R. Peart
Martha M. Peart
Willis M. Peele
John K. Pell
Richard E. Pepper
George L. Perry
John S. Perry, Jr.
Thomas H. Peters
Kenneth J. Peters
Alan K. Petersen
George W. Petersen, II
Larry W. Peterson
Robert L. Peterson
George L. Petritz
Kenneth W. Phelps
Anthony P. Piacentino
Donald L. Pickell, Jr.
James M. Pieczko
Albert L. Pierce, Jr.
Harvey A. Pierce
Carl V. Pierson, Jr.
Robert P. Pike
Dennis L. Pike
Donald W. Piltz
Charles M. Pinkston
John A. Pisano, Jr.
William E. Pitts
John R. Plain
Richard P. Platts
David S. Plewes
David A. Plummer
Joseph C. Poe
Richard T. Pohl

Jack M. Pohlmeyer
James G. Pohoski
Keith Randall Poplet
Estate of Pat K. Porter c/o Emily Porter
William T. Poteet, Jr.
Charles E. Poust
Prince S. Powell, Jr.
Michael A. Pratt
Estate of Gary N. Pressler, c/o Mary Lee Pressler
Michael J. Preston
Alan W. Price
Michael J. Price
Charles G. Primich
Ron D. Prox
Estate of James T. Prucha, Jr c/o Marianne Otieza
George S. Pupich
Theodore F. Purtell
Richard B. Quale
James T. Quarles
Charles John Quilter, II
Louis F. Rabe
David D. Ralston
Robert P. Rambo
David R. Randolph
Stephen T. Raphael
Anthony A. Rasch
Charles Don Rathbun
James G. Ratliff, Jr.
Clarence E. Ray, Jr.
Carl W. Raymond
Terry A. Raymond
Mary K. Reagor
Ronald R. Reaume
Gary Lee Reed
Jerry K. Reed
Harry J. Reel
James W. Reese
Edward E. Rehnstrom
Francis C. Reidinger
David J. Reinhard
Ronald A. Reinhart
Estate of David M. Remley c/o David Brian Remley
David R. Remont
Paul F. Repp
Gary L. Rezeau
Corlin-Ann B. Rhoades

Gregory L. Rhyne
Plato S. Rhyne
George Kent Richards
Thomas M. Richards
James Barry Richardson
George Robert Rickley
James T. Riddick
Christopher R. Rieder
Carl H. Riese
Douglas Grey Riffey, Jr.
Bennett L. Rifkin
Noel L. Riggins
Michael F. Riley
Victor A. Riley
Ronald P. Rinderknecht
Jon R. Rineman
Estate of Robert R. Rioux, c/o Mary Ann Rioux
Gary Wayne Ritter
Jere W. Rivers
Estate of Dale A. Roach, Sr., c/o Nancy Roach
Thomas P. Roan
Patrick Robb
Eugene A. Roberts, III
William P. Roberts
David L. Roberts
James R. Roberts
Dan W. Robertson
Irene C. Robertson for the Estate of James Robertson
Max A. Robertson
Neil A. Robertson
Scott Robertson
William G. Robertson
Estate of Dean E. Robnett
Larry L. Rodammer
Knox Rodgers
Steven R. Rodnon
William J. Rodway
George M. Rogers
Ronald W. Roland
Lawrence D. Rollow
Laurence M. Romero
James M. Rosen
Roger D. Ross
Douglas T. Rounds
Mitchell L. Rowland
Allan H. Roy

Robert T. Royall
Estate of Steven M. Ruble c/o Darlene Ruble
Robert C. Rudy
Harry F. Rue
Thomas P. Rumple, Jr.
Richard L. Runnels
Clarence J. Rupp
James M. Rush
David G. Rushton
Bobby Lynn Russell
Estate of James Laing Russell
c/o Ann Maguire Russell
Rodney O. Russell
Thomas H. Russell
Estate of William D. Rutledge c/o Frankie Rutledge
Donald J. Ryan
Steven R. Ryf
Stephen Lee Sachs
Phillip L. Sain
Warren R. Salkeld
James D. Salzmann
Joseph A. Sanches, II
Keith D. Sander
Charles R. Sanders
Charles D. Sargent
Jack E. Saux
Raymond F. Sawtelle
Billy R. Scaggs
Lee E. Schalon
Colin C. Scheidt
Dennis W. Schepman
James E. Schlough
Paul Lowell Schmoker
Martin A. Schneider
Bruce W. Schollmeyer
Norman E. Schulze
Erik Schumy
Paul G. Scibona
Carl R. Sciurba
Stephen D. Scofield
Lockwood B. Scoggin, Jr.
Karl Jay Scott
Philip M. Scott
Robert E. Scott
Roland B. Scott, Jr.
Donald R. Screws

John A. Seals, Jr.
Patricia A. Sedgwick for the Estate of Robert H. Sedgwick
Thomas R. Seever
Richard I. Selberg
Peter A. Sellen
John R. Sellmer
Michael W. Senior
Richard Shandor
James T. Sharp
John M. Sharp
Kerin Louis Shaughnessey, III
Thomas W. Sheehy
Robert D. Shelton
Robert C. Shepherd
William S. Shepherd
Charles A. Sherman
Craig A. Sherman
Daniel L. Sherrill
Melvin L. Shettle, Jr.
Dennis J. Shields
Jack W. Shinn
Edward R. Shipley
Jack M. Shirkey
Michael N. Short
Richard A. Shutack
James A. Sibley
Charles R. Sidenstricker
Richard B. Sievers
Robert W. Sigler
Maynard Daniel (Dan) Siler, III
Charles Weatherill Simons
Gerald G. Simpson
Joe H. Singletary
Oneal L. Sisson
David W. Skjerven
David R. Skoog
Steven A. Skowronski
Mitchell J. Slater
Richard F. Smail, Jr.
Ronald M. Small
Harold J. Smart
David M. Smith
Estate of Edward P. Smith c/o Cheryl B. Smith
Gerald B. Smith
Glenn H. Smith
Gregor D. Smith

Jerome G. Smith, II
Michael A. Smith
Paul K. Smith
Reuben U. Smith
Robert C. Smith
Ronald V. Smith
Stephen L. Smith
Frederick B. Smith, Jr.
Morgan Cole Smith, Jr.
William H. Snead
Robert J. Snelling
Charles R. Snider
Edward M. Sniffin
Thomas F. Snipes
Guy B. Snodgrass
Jeffrey W. Snyder
William T. Sonnenberg
Thomas N. Soodsma
Lynn D Sorenson
Lane S. Sorrelle
Taylor Lindsay Spangler
William R. Speaks, Jr.
James A. Spires
Don P. Spivey
Carroll V. Springer
Jerry L. Stamps
James P. Starkey
John A. Stauter, Jr.
Richard D. Stearns
William Coleman Stedfield
Michael J. Steele
Bert L. Steele, Jr.
Barry H. Steiner
Robert L. Stephens
Donald F. Stevens
William L. Stevens
John C. Stevens, Jr.
David M. Stevenson
George Alan Stewart
Ronald Edwin Stewart
William J. Stewart
Craig A.Stienecker
Thomas S. Stites
William D. Stitt
Darryl L. Stockton
Herbert Stockton

Edward S. Stokes, III
James R. Stone
Thomas J. Stone
Stephen Stong
Robert Austin Stothart
Warren S. Stovall
Jack Stovall, Jr.
Keith A. Stover
James R. Stowe
Gary F. Stricker
Charles L. Strickland
Dale R. Strickland
James D. Struble
Bruce Stuart
Dennis Marvin Stubsten
Daniel Roy Stukas
Kern V. Stump
Larry R. Sturniolo
James H. Suckow
Paul J. Sullivan
Richard L. Sullivan
Steven B. Sullivan
Estate of Herbert Summers c/o Judy Harris Summers
Joel L. Summers
Roger R. Sundberg
Carl J. Sutkus
George L. Suttler
Larry K. Sutton
Michael R. Sutton
Steven J. Svoboda
Frederick G. Swain
Estate of William P. Sweetay c/o Cindy M. Wood
William P. Swettman, Jr.
Jon N. Swift
John C. Swofford
Charles E. Sword
Donald B. Sykes
Donald K. Szatkowski
Mark J. Sztanyo
Walter L. Taft
Estate of Tom C. Talton c/o Martha B. Talton
Jerry L. Tate
John P. Tawes, Jr.
Cal W. Tax
Estate of Creigh W. Taylor c/o Gloria Taylor
Howard R. Taylor

James Robert Taylor
Mark J. Taylor
Roger W. Taylor
Terry J. Taylor
David N. Taylor, Jr.
Lee O. Taylor, Jr.
Philip Teal
Richard C. Tedrow
Estate of Donald J. Teeple
c/o Chris Teeple
George P. Terwilliger
Antoni A.Thelen
Peter W. Thelen
Robert W. Thome
David J. Thompson
Don D. Thompson
Donald W. Thompson
John A. Thompson
Stewart W. Thompson
Thomas G. Thompson
Vernon C. Thompson, Jr.
Andrew J. Thompson, III
John Steven Thompson, Sr.
Robert H. Thorne
John B. Thurman
Clinton A. Thykeson
Don F. Tibbs
David R. Till
James C. Tillman, Jr.
Estate of Calvin W. Tinsley c/o Melinda Tinsley
Samuel John Todd
William S. Todd
Charles S. Tommasello
Richard B. Tourtellott
Estate of George Jerome Townsend c/o Patricia E. Townsend
George W. Tregre
William O. Trent
Robert B. Trevathan
Estate of Frank C. Triolo c/o Vicky Triolo
Robert B. Trogdon, Jr.
David Trucksess
Alva B. Truesdale
Robert A. Tschurwald
John D. Tullier
Charles T. Tully, Sr.
William F. Turner

Gordon M. Tushek
Robert R. Twaddle
Theodore A. Tweet
Stephen R. Tyler
R. Lee Tysinger
Fred Ueckermann
Vinton Kenneth Ulrich, Jr.
John G. Unverzagt
James E. Urban
John L. Urban
Kenneth Paul Urban
Edwin D. Uselmann
John Uskovich
Jeffrey J. Vadakin
Leland Burt Van Oss
Bruce E. Van Vliet
John G. Van Bebber, Jr.
Henry John Vance
Kenson R. Vance
William Vance
George E. Vandenberg
Thomas J. Vanderhorst
Henry J. Van DeWalle
William A. Van't Wout
Donald Eugene Varvil
Henry F. Vehige
Edward G. Velazquez
Ronald J. Verner
Thomas J. Verrengia
Patrick Virtue
William F. Voigt
William Vorderbruggen
Kenneth L. Vowell
James A. Wade
Christopher Neil Waggener
Christopher F. Wagner
Dwight R. Wait
Anthony L. Wakefield
Ernest G. Wakeman
David B. Waldrop
Don C. Walker
Joy S. Walker
David H. Wall
Harold B. Wallace
Scott L. Wallace
Alan H. Walsh

William Dennis Walsh
Charles David Walters
Thomas D. Walters
Michael J. Walton
James M. Warburton
Gerald P. Ward
Michael D. Ward
Richard E. Ward
Terry Krips Ward
Wayne E. Ware
Richard M. Warner
Robert E. Warren
Rogers Patton Warren
Paul P. Watkins, Jr.
Michael D. Watson
Douglas J. Watt
Robert H. Wayne, Jr.
Donald R. Weast
Robert O. Weaver, Jr.
Philip J. Weber
James W. Webster
Larry E. Webster
Christian G. Weeber, Jr.
Walter J. Wegesser
William R. Weigel
Maurice D. Weiler
Lee K. Welch
James Roy Wells
Michael J. Wells
Rodney L. Wells
Lee R. Wendelbo
Evan K. Wenger
Paul W. Wenske
Paul A. Werner, Jr.
John George West
Stuart Logan West
Charles R. Westbrook
John Edward Westman
Charles E. Wetherell
Jack J. Weymouth
Max T. Weyrick
Darrel D. Whitcomb
Donald R. White
James L. White
Steven J. White
Allan Charles White

Wilbur Larry Whitesell
Jeffrey B. Whitford
Estate of David L. Whitley c/o Joanne B. Whitley
William W. Whorley
Peter A. Wick
Herbert K. Wiese, Jr.
William Michael Wiggins
Denis Wigley
Walter L. Wilkening
Peter J. Willetts
Charles M. Williams
Donald R. Williams
James L. Williams
Lonnie Ray Williams
Perry E. Williams
Robert Mark Williams
Robert W. Williams
William F. Williams
William Walter Williams
Jerry C. Williams
Richard Douglass Williams
Arthur J. Williams, Jr.
David. M. Williams, Jr.
Bruce A. Williamson
Roger Joseph Willis
Jerry D. Willoughby
Lance A. Wilmarth
Charles P. Wilson
Jefferson D. Wilson
William J. Wirth
Thomas F. Wirtzfeld
Ronald E. Wisecup
Gary L.Witt
Prentice G. Witt
Robert H. Wittig
John R. Wittmeyer
William H. Wittrig
Gerald D. Wohlford
Keith R. Wolcott
Douglas M. Wolff
Ralph E. Wolken
Peter W. Wong
James L. Wonsettler
Gary Harris Wood
Winfield W. Wood
George A. Wood, Jr.

James Edward Wood, Jr.
Larry N. Woodall
Berryman Edwards Woodruff, III
Charles R. Woods
John R. Wortmann
Earl N. Wycoff
Ronald L. Yanish
Estate of Harry C. Yarborough c/o Linda Yarborough
Farris Franklin Yates
Richard M. Yeates
Robert H. Wittig
John R. Wittmeyer
William H. Wittrig
Gerald D. Wohlford
Keith R. Wolcott
Douglas M. Wolff
Ralph E. Wolken
Peter W. Wong
James L. Wonsettler
Gary Harris Wood
Winfield W. Wood
George A. Wood, Jr.
James Edward Wood, Jr.
Larry N. Woodall
Berryman Edwards Woodruff, III
Charles R. Woods
John R. Wortmann
Earl N. Wycoff
Ronald L. Yanish
Estate of Harry C. Yarborough c/o Linda Yarborough
Farris Franklin Yates
Richard M. Yeates